**1UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
_____x
YVONNE ROBINSON, ROSE CIROS, JESSE R. HOWELL
individually and on behalf of all others similarly situated,
Plaintiffs,

vs.

KIA MOTORS AMERICA INC; KIA MOTORS
MANUFACTURING GEORGIA INC., KIA MOTORS
CORPORATION, Kia Motors Co., Ltd.,
SEOUL SOUTH KOREA COMPANY(S),
Hyundai Motor Company, XYZ CORP

Defendants.                                                    Case No.:
_____x

## DEMAND FOR JURY TRIAL

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Yvonne Robinson, JESSE R. HOWELL and Rose Ciros (collectively

"Plaintiffs") bring this class action against Defendants Kia Motors America, Corporation.

and Kia Motors Manufacturing Georgia Inc. (collectively, "Defendants" or "Kia") on

behalf of themselves and all others similarly situated. Plaintiffs allege upon personal

knowledge and belief as to their own acts, and upon information and belief (based on the

investigation of their counsel) as to all other matters.

## INTRODUCTION

1.  This class action lawsuit seeks damages, injunctive and declaratory relief and

reasonable attorney fees and costs on behalf of a class of all persons who purchased as

consumers on behalf of themselves and the class(es) defined below, which consist of

current and former owners  and leasees of certain Kia Sorento, model year First

generation (2002–2009) equipped with a Hyundai-manufactured 3.5L 24-valve DOHC

V6 engine. It is alleged here that these engines were designed with a defective engine crank sprocket and balancer, in that the design of the balancer sticks out too far and weighs too much, breaking off the spring guide Pin and causing the front pulley bolt to break, which then causes catastrophic engine failure, loss of power steering, loss of the charging system, loss of the cooling system and loss of control of the vehicle, and is a hazard to owners and other individuals who may be in harms way.

2.     Through a common and uniform course of conduct, the Defendants' knowing failure, despite their longstanding knowledge of the problem, to disclose to Plaintiffs and other consumers that Kia Sorento (2002-2009), vehicles (collectively, the "Class vehicles") are predisposed to snap the front pulley bolt resulting in the ejection of the front pulley, which then sets off a chain reaction of shredding all the belts attached to it including the power steering, battery charging system, and cooling system, all resulting in severe heat buildup, loss of steering control while being driven, loss of power while being driven, hazardous accident potential and  engine failure, and metal debris, resulting in serious and expensive damage to, and/or catastrophic failure of the engine within the Class vehicles (collectively, the "front pulley balancer bolt problem"). Not only did Kia actively conceal the material fact that this particular component is defectively designed (and requires costly repairs to fix), but it also did not reveal that the existence of this defect would diminish the intrinsic resale value of the vehicle.   Furthermore, through a common and uniform course of conduct, Defendants have failed to honor both federally mandated and voluntarily offered warranties that would have required them to repair or correct, at no cost to the consuming public, the nonconforming and/or defective vehicle(s).

3.      Upon information and belief, Defendants have been aware for years of the true nature and cause of the front pulley balancer bolt problem in class vehicles. This knowledge is evidenced by widespread complaints on the internet where there are 64 complaints alone on a single website (www.pissedconsumer.com); another 20 on another site (http://www.my3cents.com/reviews/kia/sorento) and elsewhere exceeding over 100 complaints about the front pulley balancer bolt problem, accounts from class members who have complained about this very issue to Defendants, and technical service bulletins issued by Defendants for the purpose of attempting to address this problem. Notwithstanding this knowledge, Defendants have intentionally withheld from, and/or misrepresented to Plaintiffs and other consumers of Class vehicles this material information. Meanwhile, Defendants made numerous affirmative statements touting the high-quality and reliability of the Class vehicles.

4.      As a result of the front pulley balancer bolt problem and defective vehicle design, Defendants have benefited from collecting funds from Kia customers for vehicle service procedures such as unnecessary front pulley balancer bolt  replacements, computer re-programming and software  updates, and troubleshooting and diagnosing front pulley balancer bolt complaints, when in fact, Defendants knew the true cause of such front pulley balancer bolt problems within the Class vehicles were the defective vehicle design.

5.      Many owners and leasees of the Class vehicles have had to repair or replace their, front pulley balancer bolts multiple times, thereby incorporating costly front pulley balancer bolt repairs and/or replacements as needed to return their vehicles to expected operating condition.

6.      The Class vehicles pose significant safety risks as a result of the front pulley balancer bolt problem since this condition causes the Class vehicles' front pulley balancer bolt to snap, ejecting the pulley and shredding critical belts including the power steering, battery charger, cooling and other critical functions, creating a dangerous instrumentality on the road and a real threat to others in proximity to the vehicle.  This creates a serious safety concern to occupants of the Class vehicles, the occupants of other vehicles, and the public in general.

7.      The front pulley balancer bolt in the Class vehicles are uniformly and inherently defective in design, and prematurely fail under normal operating conditions well in advance of their expected useful life.

8.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, as set forth herein, the Class vehicles have a lower market value and are inherently worth less than they would be in the absence of the front pulley balancer bolt problem**.**

9.      For customers with vehicles within the written warranty period, Kia has done no more than to temporarily repair the crank shaft, front pulley balancer bolt within the Class vehicles or to replace them with other similarly defective and inherently failure-prone crank shaft, front pulley balancer bolt . Kia has refused to take any action to correct this concealed design defect when it manifests in Class vehicles outside the warranty period.

10.      Since the front pulley balancer bolt problem typically manifests shortly outside of the warranty period for the Class vehicles – and given Defendants' knowledge of this concealed design defect and failure to disclose it – Kia's attempt to limit the warranty with respect to the Front pulley balancer bolt problem is unconscionable here.

11.     As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or leasees of Class vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or value.

12.     Plaintiffs bring this action to redress Defendants' misconduct and seek recovery under state consumer protection statutes, and for breach of express warranty, breach of implied warranty, and unjust enrichment. The purpose of this action is to hold accountable, and to obtain maximum legal and equitable relief from Defendants for producing and placing into the stream of commerce Kia Sorentos. These vehicles do not conform to the durability and longevity of vehicles reasonably expected by retail consumers or to the statements and affirmations made by Defendants in connection with the sale and delivery of the vehicles to retail consumers.

## JURISDICTION AND VENUE

13.  This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact substantial business in this district. Defendants have advertised in this district and have received substantial revenue and profits from sales and/or leases of the Class vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15. This Court has personal jurisdiction over the Defendants. According to the Defendants' website, there are multiple Kia dealers located in New Jersey. Additionally, Kia Motors America, Corp. maintains one of its regional Market Representation Offices at One Tower Center in East Brunswick, New Jersey. *See*

*http://www.kia.com/#/dealerlocator/dealerResult/zipcode/07017*

As such, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully place Class vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

## THE PARTIES

16. Plaintiff Yvonne Robinson is a resident and citizen of the State of New Jersey, residing at 34 Barbara Street, Bloomfield, NJ 07003.

17. Plaintiff Rose Ciros is a resident and citizen of the State of New Jersey, residing at 1 Tiros Ave., Sewell, NJ.

18. Plaintiff JESSE R. HOWELL is a resident and citizen of the State of Ohio, residing at 238 Kinkle Ave, Mansfield, Ohio 44907.

19. Defendant Kia Motors America, Corp. ("KMC") is a California corporation which is qualified to do, and does, business in the State of California and in this judicial district. Upon information and belief, Defendant KMC can be served through its registered agent for service in California at 111 Peters Canyon Road, Irvine, CA 92606. Kia Motors Manufacturing Georgia Inc. ("KMMG") has a manufacturing plant located at 7777 Kia Parkway, West Point, GA 31833.

20. Defendant is a South Korean company which does business in this State and judicial district at One Tower Center in East Brunswick, NJ.

21.     Upon information and belief, Defendant KMC communicates with Defendant KMMG concerning virtually all aspects of the Kia products it distributes within the United States.  Upon information and belief, the design, modification, installation and decisions regarding the front pulley balancer bolt within the Class vehicles were performed exclusively by Defendants KMMG and/or KMC.

22.     Hyundai Motor Company is a South Korean multinational automaker headquartered in Seoul, South Korea. Hyundai was founded in 1967 and it, along with Kia, together comprise the Hyundai Motor Group, which is the world's fourth largest automobile manufacturer based on annual vehicle sales in 2010 which manufactures the 3.5L 24-valve DOHC V6 engine at issue in this complaint.

## FACTUAL ALLEGATIONS

23.     Defendants designed, manufactured, marketed, advertised, warranted, sold and leased the Class vehicles at issue in this case within this district, and throughout the United States, to members of the Classes.

24.     Plaintiffs' experiences, mirroring those of thousands of other Class vehicle purchasers who have posted messages on the Internet documenting their problems with the front pulley balancer bolt problem, demonstrates that Kia's representations to Plaintiffs and Class members were false and misleading.

25.     In 1986, Kia originally partnered with Ford Motor Company in manufacturing Mazdas (a Ford subsidiary).  In 1992, Kia Motors America (KMA) was incorporated in the United States. It was created to coordinate Kia's push to enhance the design, development, manufacturing, and marketing of Kia vehicles in North America.

26. Sorentos are equipped with a Hyundai-manufactured 3.5L 24-valve DOHC V6 engine producing 192 hp (143 kW) at 5500 rpm, and 217 lb·ft (294 N·m) of torque @ 3,000 rpm.

27.     At the front of the engine is a pulley which is driven by the engine.  That pulley is attached to the engine by a sprocket and single pin about the size of a sewing needle. When that pin fails, it then sets of a chain reaction of shredding all the belts attached to the pulley,  including the power steering, battery charging system, and cooling system, all resulting in severe heat buildup, loss of steering control while being driven, loss of power while being driven, hazardous accident potential and  engine failure, and metal debris, resulting in serious and expensive damage to, and/or catastrophic failure of the engine within the Class vehicles (collectively, the "front pulley balancer bolt problem").

28.     This creates a serious safety concern to occupants of the Class vehicles, the occupants of other vehicles, and/or the public in general.

29.     This problem may be remedied by a relatively simple repair which can be performed as a preventive measure at Kia dealerships saving the Class thousands of dollars in repairs and safety of the general public.

30. Upon information and belief, Defendants' maintenance schedules for the Class vehicles did not require having the front pulley balancer changed during the life of the vehicle.

31. Upon information and belief, Defendants' faulty design and/or modifications of the front pulley balancer bolt and sprocket specifically tailored to the Class vehicles, including, but not limited to, simply adding additional pins to the sprocket.  It was the design's cause, in part catastrophic front pulley balancer bolt  failure resulting in a chain reaction of shredding all the belts attached to the pulley,  including the power steering,

8

battery charging system, and cooling system, all resulting in severe heat buildup, loss of

steering control while being driven, loss of power while being driven, hazardous accident

potential and engine failure, and metal debris, resulting in serious and expensive damage

to, and/or catastrophic failure of the engine within the Class vehicles

32. The front pulley balancer bolt and sprocket are designed to function for periods (and

mileages) substantially in excess of those specified in Defendants' warranties, and given

past experiences, consumers legitimately expect to enjoy the use of an automobile

without worry that the front pulley balancer bolt would fail for significantly longer than

the limited times and mileages identified in Defendants' warranties.

33. Upon information and belief, Defendants, through (1) their own records of customer

complaints, (2) dealership repair records, (3) records from the National Highway Traffic

Safety Administration (NHTSA), and other various sources, were well aware of the

alarming failure rate of the front pulley balancer bolt within the Class vehicles.

34.     Regardless, Kia failed to notify customers of the nature and extent of the

problems with the front pulley balancer bolt while also failing to provide any adequate

remedy. Despite such knowledge, Kia continued to manufacture and market the Class

vehicles with the front pulley balancer bolt problem.

35. Members of the Classes could not have discovered the latent defects within the front

pulley balancer bolt through any reasonable inspection of their vehicles prior to purchase.

36. Defendants were under a duty to Plaintiffs and the Class to disclose the front pulley

balancer bolt problem within the Class vehicles because: (a) Defendants were in a

superior position to know the true state of facts about the front pulley balancer bolt ; (b)

Plaintiffs and Class members could not reasonably have been expected to learn or

9

discover that the Class vehicles had a defect until manifestation of the failure; (c) Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the front pulley balancer bolt defect; and (d) the defect caused safety problems in driving the vehicle.

37.     The existence of the front pulley balancer bolt problem was within Defendants' exclusive knowledge and control. Defendants actively concealed the material defect from Plaintiffs and the Class, and Defendants' partial representations about the Class vehicles' quality – made without revealing the front pulley balancer bolt problem - gave rise to a duty to disclose.

38.     Defendant expressly warranted the affected vehicles to be free from drivetrain defects for a period of 5 years or 100,000 miles.

39.     When a failure occurs after the expiration of the warranty period, Defendants charge Class members to diagnose and/or repair the front pulley balancer bolt problem, when in fact, Defendants are aware of the design defect.

40.     When a failure occurs during the warranty period, Defendants do not disclose the nature of the front pulley balancer bolt problem in order to avoid having to provide a no-cost repair.

41.     In addition to Defendants collecting funds related to the front pulley balancer bolt problem, many Class members have paid monies to third-party repair shops for services relating to the diagnosis and/or repair the front pulley balancer bolt problem. Class members have not received reimbursement for these expenses despite Defendants' awareness of the front pulley balancer bolt problem.

42.    Buyers, leasees, and other owners of the affected vehicles were without access to the information concealed by Defendants as described herein, and therefore, reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and leasees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles.

43.    Defendants' deceptive marketing and sales practices, including affirmative misrepresentations and omissions, were material and substantial and were made in the form of common misrepresentations of material facts upon which persons, including Plaintiffs and Class members could be expected to, and did, rely.

44.    As alleged in this Complaint, Defendants' advertisements and representations constitute deceptive and untruthful advertising and marketing. Defendants' scheme of false and misleading advertising and marketing has resulted in tens of thousands of consumers purchasing the Class vehicles, based upon the expectation that the Class vehicles have the qualities that are advertised and will function as represented.

45.    Defendants unfair and deceptive course of conduct is common to all purchasers of the Class vehicles and each putative Class member was injured by purchasing a defective product at an excessive price because it contained a defective design that did not become apparent until shortly after expiration of the warranty period, and the cost to correct the defect was, and is, substantial.

46.     As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or leasees of Class vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or value.

47.     Plaintiffs bring this action to redress Defendants' violations of the New Jersey Consumer Fraud Act and other consumer protection statutes, and seek recovery for Defendants' negligent misrepresentations, breach of express warranty, breach of implied warranty, and unjust enrichment.

## CLASS ALLEGATIONS

48.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all others similarly situated, comprising a class for the causes of action pled below consisting of "all persons in the United States who purchased (or received as part of an automobile purchase or lease transaction), during model year (MY) through the present.

49.     These are numerous questions of law or fact common to the members of the Class which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

    a. whether Defendants, acting individually or collectively with their agents, failed to conduct appropriate, reasonable and adequate testing of the vehicle to determine the durability and longevity of the vehicle and their conformity to the reasonable expectations of consumers in the United States and New Jersey;

    b. whether Defendants, acting individually or collectively with their agents, failed to warn or otherwise inform Plaintiff and other members of the Class; of the premature and abnormal failure of the pin and bolt holding the pulley on the engine;

c. whether Defendants omitted to adequately disclose and/or affirmatively concealed, in their affirmations and promotional materials, among other things, the premature and/or abnormal wear associated with the failure of the pin and bolt holding the pulley on the engine;

d. whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., the Uniform Commercial Code and common law; and

e. whether Defendants engaged in unconscionable commercial practices, including the failure to abide by the terms of a written warranty and/or bait and switch tactics, in connection with warranty assertions, interpretations, claims and denials, in violation of the New Jersey Consumer Fraud Act.

50.     The claims asserted by the named Plaintiffs are typical of the claims of the members of the Class.

51.     This class action satisfies the criteria set forth in Fed. R. Civ. P. 23(a) and 23(b)(3) in that Plaintiffs are members of the Class and Subclass; Plaintiffs will fairly and adequately protect the interests of the members of the Class and Subclass; Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class; Plaintiffs have retained attorneys experienced in class and complex litigation; and Plaintiffs have, through their counsel, access to adequate financial resources to assure that the interests of the Class and Subclass are adequately protected.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. it is economically impractical for most members of the Class to prosecute separate, individual actions; and

b. after the liability of Defendants has been adjudicated, the individual and aggregate claims of all members of the class can be determined readily by the Court.

53.     Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members which would substantially impair or impede the ability of other Class members to protect their interests.

54.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiffs and the Class members.

55.     Numerosity: Upon information and belief, each of the Classes is so numerous that joining of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of thousands of Class vehicles have been sold and leased in the United States of America, and thousands of Class vehicles have been sold or leased in each of the states that are the subject of the State Sub-Classes.

56.     Existence and Predominance of Common Allegations of Fact and Law: Common allegations of law and fact exist as to all members of the Classes. These allegations predominate over the allegations affecting individual Class members. These common legal and factual actions include, but are not limited to:

a. whether the crank shaft, front pulley balancer bolt within the Class vehicles are predisposed to fail prematurely;

b. whether the crank shaft, front pulley balancer bolt  in the Class vehicles contain a

design defect;

c. whether the defective vehicle design is common to all Class vehicles;

d. whether the front pulley balancer bolt problem is common to all Class vehicles;

e. if so, whether the defective front pulley balancer bolt design causes the Front pulley

balancer bolt problem in Class vehicles;

f. whether Defendants knowingly failed to disclose the existence and

cause of the front pulley balancer bolt problem in Class vehicles;

g. whether Defendants' conduct violates the New Jersey Consumer

Fraud Act and the other statutes asserted herein;

h. whether, as a result of Defendants' omissions and/or misrepresentations of material

facts related to the front pulley balancer bolt problem and defective front pulley balancer

bolt design, Plaintiffs and members of the Classes have suffered ascertainable loss of

moneys and/or property and/or value;

i. whether Plaintiffs and Class members are entitled to monetary damages and/or other

remedies, and if so the nature of any such relief; and

j. whether Defendants have been unjustly enriched at the expense of Plaintiffs and Class

members.

57.     Typicality: Plaintiffs' claims are typical of the claims of the Classes since they

purchased Class vehicles with a front pulley balancer bolt problem, defective vehicle

design, and defective front pulley balancer bolt design, as did each member of the

Classes. Furthermore, Plaintiffs and all members of the Classes sustained monetary and

economic injuries including, but not limited to, ascertainable loss arising out of

Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

58.     Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

59.     Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims and registration records, and database of complaints.

60.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FACTUAL BACKGROUND

61.     Plaintiffs repeat and restate each of the foregoing paragraphs above and they are incorporated herein by reference as though the same were set forth below at length.

**Plaintiff Yvonne Robinson**

62. Plaintiff, Yvonne Robinson ("Robinson") purchased a pre-owned 2005 Kia Sorento in or around October 2011 from Brick City Motors Inc. located in Newark, New Jersey.

63.     Plaintiff Robinson purchased (and still owns) this vehicle for personal, family, and/or household uses. Plaintiff Robinson's vehicle bears Vehicle Identification Number ("VIN"): KNDJD733455406087.

64.     Suddenly on or about January 2012, Robinson experienced total engine failure and nearly got into a serious accident when she heard a boom and lost power steering as a flurry of red lights lit up her dash board.

65.     Robinson experienced catastrophic front pulley balancer bolt failure requiring her vehicle to be towed to Kia for diagnosis. Robinson was thereafter informed by Kia of San Bernardino that the front pulley balancer bolt in her vehicle could not be repaired and instead required the installation of a new front pulley balancer bolt at an estimated cost of $826.58. Plaintiff Robinson declined this costly repair.

66.     Plaintiff Robinson then brought her vehicle to a specialty front pulley balancer bolt service center that performed the required front pulley balancer bolt repairs. In total,

she incurred charges of approximately $722.50 to repair the front pulley balancer bolt as a result of the defective vehicle design.

67.     Plaintiff Robinson has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the front pulley balancer bolt problem, including, but not limited to, diminished value and out-of-pocket loss associated with a catastrophic front pulley balancer bolt failure and attempted repairs in her class vehicle.

68. At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Robinson of Defendants' omissions and/or misrepresentations related to the front pulley balancer bolt problem and/or defective vehicle design.

**Plaintiff** JESSE R. HOWELL

69.     Plaintiff, JESSE R. HOWELL ("HOWELL") purchased a new 2005 Kia Sorento in or around December 2005 from Courtesy Kia located in Shelby, Ohio, a recognized Kia dealer.

70.     Plaintiff Howell purchased (and still owns) this vehicle for personal, family, and/or household uses. Plaintiff Robinson's vehicle bears Vehicle Identification Number ("VIN"): KNDJC733555428280.

71.     Howell strictly followed the maintenance schedule as recommended by the Defendants.  At 60,000 miles, Howell had the timing belt, power steering belts, water pump, and idler tension pulley all replaced all pursuant to Kia specifications.

72.     On or about October 31, 2012, Howell heard a ticking noise and notice that he had no power steering and the alternator light went on.  He took it to a qualified repair

shop and the vehicle was diagnosed with a broken pulley bolt as described in this law suit.

73.     Howell then towed the vehicle to Spitzer of Mansfield Inc., 744 Park Ave West, Mansfield, Ohio, 44906 (419) 524-2511 Fax (419) 525-4714, a recognized Kia Dealer for repair on or about November 2, 2012.  Paul, the service manager, told Howell that he would call Kia and ask them what they could do.  On or about November 5, 2012, Howell received a call from the said Kia dealer and was told they would not honor the warranty or do any repair.

74.     Howell protested, but then towed the vehicle to another shop for repair estimated to be close to $4,500.00.

**Plaintiff Rose Ciros**

75. Plaintiff Rose Ciros ("Ciros") purchased a new 2005 Kia Sorento on 08/30/2006 from Turnersville Kia located in Sicklerville, NJ.

76. Plaintiff Ciros purchased (and still owns) this vehicle for personal, family, and/or household uses. Plaintiff Ciros's vehicle bears VIN:  KNDJC733155375075.

77. Beginning in May of 2010, Plaintiff Ciros began experiencing the same front pulley balancer bolt problems that have been experienced by all class members, as further described below which resulted in total engine failure, as diagnosed by the Kia service department.

78.  On or about May 2010, Plaintiff Ciros brought her vehicle (which had 93,664 miles on it), while under warranty, to Turnersville Kia seeking repairs to fix the engine problems. Plaintiff Ciros was told by Turnersville Kia that the vehicle was tapping and misfiring and was caused by damaged valve seat as a result of the catastrophic front

pulley balancer bolt being ejected causing the same engine failure as the other class members.

79.     Plaintiff Ciros was told that she needed a new engine and that the repair would not be covered by her warranty.

80.     Plaintiff Ciros rejected Kia Motors America's offer, which would have left her with over $3,800 in out-of-pocket costs and instead took the vehicle to an independent front pulley balancer bolt shop, which was able to repair the problem at a cost of $1,457.30.

81. Plaintiff Ciros incurred charges of approximately $1,546.30 as a result of the defective vehicle design.

82. Plaintiff Ciros has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the front pulley balancer bolt problem, including, but not limited to, out-of-pocket loss associated with a diagnosis and repair of the front pulley balancer bolt, and the inherently diminished value of the vehicle.

83. At no time did Defendants or any of its agents, dealers or other representatives inform Plaintiff Ciros of Defendants' omissions and/or misrepresentations related to the front pulley balancer bolt problem and/or defective vehicle design.

**TOLLING OF STATUTES OF LIMITATIONS**

84. Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Classes could not have reasonably discovered the true, latent, and widespread defective nature of the Class vehicles and the front pulley balancer bolt until shortly before this class action litigation was commenced.

85. Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Classes the true character, quality and nature of the Class vehicles equipped with the crank shaft front pulley balancer bolt, that this defect is based on a poor design, and that it will inevitably require costly repairs to fix shortly after the warranty period expires (but well before the end of the useful life of the vehicle), and that this diminishes the resale value of the Class vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
### (On Behalf of the New Jersey Class)

86. Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

87. The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J.S.A. 56:8-2.

88. Plaintiff Robinson, the other named Plaintiffs, and members of the Class are consumers who purchased and/or leased Class vehicles for personal, family or household use.

89. Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA. Specifically, Defendants were aware that the Class

vehicles suffered from a common design defect resulting in front pulley balancer bolt problems, but failed to disclose this to Plaintiffs and Class members. Defendants also marketed these vehicles as being of superior quality when the class vehicles contained a known defect. These affirmative misrepresentations were material to the vehicle purchases, and were false statements of fact.

90. Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions. Defendants knowingly failed to disclose the design defect in the Class vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.

91. Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the front pulley balancer bolt, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class vehicles with the said design defects and all of the resultant problems. These facts that Defendants concealed were solely within their possession.

92. Defendants intended that Plaintiffs and all Class members rely on the acts of concealment and omissions, so that they would purchase the class vehicles.

93. Defendants' conduct caused Plaintiffs and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs and Class members have suffered an ascertainable loss by receiving less than what was promised.

94. A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class members. Had the defective

vehicle design in the Class vehicles been disclosed, consumers would not have purchased

them or would have paid less for the Class vehicles had they decided to purchase them.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes,

respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under

Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as

defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as

Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential

damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary

relief;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an

order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a

minimum, to provide Plaintiffs and Class members with appropriate curative notice

regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (On Behalf of each of the State Sub-Classes)

95. Plaintiffs and the Classes repeat and incorporate herein by reference each and every

paragraph of this complaint as though set forth in full in this cause of action.

96. Defendants expressly warranted that the Class vehicles were of high quality and, at a minimum, would actually function properly.

97. Defendants' breached this warranty by selling to Plaintiffs and Class members the Class vehicles, which contain the known front pulley balancer bolt problem, since they are not of high quality, and inevitably fail prematurely (and well before the expiration of their useful life).

98. Defendants' breach of this warranty caused damages to Plaintiffs and Class members.

99. Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

100. The time and mileage limitations contained in Defendants' warranty period were also unconscionable and inadequate to protect the Plaintiffs and members of the Classes. Among other things, the Plaintiffs and members of the Classes had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Kia and Class members, and Kia knew or should have known that the Class vehicles were defective at the time of sale and would fail well before their useful lives.

101. Defendants concealed material information (that the crank shaft, front pulley balancer bolt in the Class Vehicles would prematurely fail) from Plaintiff and Class members. Defendants acted intentionally with the purpose of maximizing profit.

102. Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of

Defendants' conduct described herein. In addition, Defendants were put on notice of the defect because they had actual knowledge of the existence of this design defect at all relevant times.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT III
## BREACH OF THE IMPLIED
## WARRANTY OF MERCHANTABILITY
### (On Behalf of each of the State Sub-Classes)

103. Plaintiffs and the Classes repeat and Incorporate herein by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

104 Defendants impliedly warranted that the Class vehicles were of a merchantable quality.

105. Defendants breached the implied warranty of merchantability, as the Class vehicles were not of a merchantable quality due to the Front pulley balancer bolt Problem.

106. As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured, and are entitled to damages.

107. Defendant's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable here because they knowingly sold a defective product without informing consumers about the defect.

108. The time and mileage limitations contained in Defendants' warranty period are also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Kia and Class members, and Kia knew or should have known that the Class vehicles were defective at the time of sale and would fail well before normal use of the vehicle.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, Including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT IV
## Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)

109.    Each and every one of the preceding paragraphs are incorporated herein by reference as though the same were set forth herein at length.

110.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored. To remedy this problem of deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for, inter alia, failing to comply with any obligation under a written warranty and/or implied warranty. See 15 U.S.C. § 2310(d)(1). The Act authorizes a "suit for damages and other legal and equitable relief." Id. The Act authorizes the award of attorneys' fees (id.), and expressly authorizes class actions. 15 U.S.C. § 2310(e).

111.    Defendants are "warrantor[s]" within the meaning of Section 2301(5) of the Act. Plaintiffs and other members of the Class are "consumers" within the meaning of Section 2301(3) of the Act.

112.    As set forth in below, the allegations of which are incorporated herein by reference, Defendants expressly warranted the Kia Sorento, which warranties are "written warranties" within the meaning of Section 2301(6) of the Act and the Uniform Commercial Code. Defendants breached their express warranties in the manner described above and below.

113.    Defendants impliedly warranted the Kia Sorento as being merchantable and fit for a particular purpose, which warranties are implied warranties within the meaning of Section 2301(7) of the Act, and Sections 2-314 and 2-315 of the Uniform Commercial Code. Defendants breached these implied warranties in the manner described above and below. Any limitation period, limitation on recovery or exclusions of implied warranties are unconscionable within the meaning of Section 2-302 of the Uniform Commercial Code and, therefore, are unenforceable, in that, among other things, Plaintiffs and members of the Class lacked a meaningful choice with respect to the terms of the written warranties due to unequal bargaining power and a lack of warranty competition.

114. Defendants' knowledge of the fact that their Kia Sorento would incur premature and/or abnormal wear and tear and failure has given Defendants more than adequate opportunity to cure the problem, which opportunity they have not taken to date.

115. Plaintiffs and other members of the Class were damaged by Defendants' failure to comply with their obligations under the applicable express and implied warranties. As a direct and proximate cause of Defendants' breaches of express and implied warranties, Plaintiffs and other Class members have suffered actual economic damages, and are threatened with irreparable harm.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes,

respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT V
## DECLARATORY RELIEF

116. Each and every paragraph above are incorporated herein by reference as though the same were fully set forth here at length.

117. This claim is asserted on behalf of Plaintiff and other Class members in accordance with the Declaratory Judgment Act.

118. Plaintiff and other Class members are entitled to declaration that Defendants' conduct described herein constitutes violations of applicable statutory and common law. The declaratory relief requested includes an order declaring Defendants' conduct, as alleged herein, to be unlawful, and requiring Defendants to compensate Plaintiffs and

other Class members in the manner described herein and to supply Class members with replacement vehicles having ordinary life expectancy without the design defect as alleged herein.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT VI  NEGLIGENCE

119.    The allegations of paragraphs 1-118 in this pleading are incorporated as if fully rewritten herein, except if the matter would be inconsistent with the cause of action stated in this Count.

120.    Each Defendant owed to Plaintiffs an independent duty imposed by law in Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 and each Defendant breached a duty of care so that the Plaintiffs suffered legally cognizable harm. <u>Brunson v. Affinity Federal Credit Union</u>, 954 A.2d 550, 560 (N.J.Super.Ct. App. Div. 2008).

121.    Each of the Defendants' conduct caused actual physical harm to Plaintiffs or their property in placing unwarranted clouds on their titles.   <u>Public Serv. Enter. Group, Inc. V. Philadelphia Elec. Co</u>., 722 F.Supp. 184, 193 (D.N.J. 1989).

122.    In this alternate cause of action, Defendants' respective duties did not entirely emanate from contractual relationships.

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.

## COUNT VII - BREACH OF CONTRACT

123. Plaintiffs repeat and incorporate each and every matter contained above as fully stated herein except if the matter would be inconsistent with the cause of action stated in this Count.

124. Defendants and Plaintiffs entered into a binding agreement for valuable consideration that Defendants would repair the engine and drive-train at no cost of all vehicles within the class of Plaintiffs.

125. Instead, when the engines failed as a result of the front pulley design defect, Defendants breached their agreement to repair the class vehicles of the Plaintiffs.

126. As stated above in this separate cause of action there was (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F. award reasonable attorney's fees and costs; and

G. grant such further relief that this Court deems appropriate.


## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues properly triable thereby.

Respectfully submitted,


Dated: December 31, 2012                    _____/s/ Shmuel Klein_____
                                            Law Office of Shmuel Klein, PC