**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
**YVONNE ROBINSON, ROSE CIROS,**        :
**JESSE R. HOWELL individually and on** :
**behalf of all others similarly situated,** :
                                        :       **Civil Action No. 13-006 (ES-MAH)**
                                        :
            **Plaintiffs,**             :
                                        :       **OPINION**
        **v.**                          :
                                        :
**KIA MOTORS AMERICA INC, et al.,**     :
                                        :
            **Defendants.**             :
_____:

### I.  INTRODUCTION

This matter comes before the Court by way of Defendant Kia Motors America Inc.'s

motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), D.E. 10,

and Plaintiffs' Cross Motion to Amend the Complaint, D.E. 15.  The Court held oral argument

on June 20, 2014.  For the reasons set forth below, Plaintiffs' Motion to Amend is granted-in-

part and denied-in-part.  Defendants' Motion to Dismiss is therefore denied as moot without

prejudice to Defendants' right to move to dismiss the Amended Complaint.

### II.  BACKGROUND

Plaintiffs Yvonne Robinson, Rose Ciros, and Jesse R. Howell filed the Complaint as a

proposed class action against Kia Motors America Inc. ("Kia"). Plaintiffs alleged that there were

latent defects in their 2003-2005 Kia Sorento automobiles.  Essentially, Plaintiffs claimed their

vehicles were designed with a "defective . . . crankshaft pulley bold and balancer," which could

result in "breaking off the spring guide pin," causing "catastrophic engine failure."  Compl., D.E.

1, ¶ 1.  As a result, Plaintiffs sought damages in the form of "costly repairs," and "diminished

1

intrinsic resale value." Id. ¶ 2.  Plaintiffs also alleged that "despite their longstanding knowledge of the problem, the Defendants failed to disclose to Plaintiffs and other customers that Kia Sorento model year First generation 2002-2009 . . . are predisposed to have the front pulley balancer snap." Id.  In sum, the initial Complaint brought claims for: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A 56:8-1 ("NJCFA"); (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1); (5) declaratory relief; (6) negligence; and (7) breach of contract.

On March 5, 2013, Kia moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  D.E. 10.  On March 18, 2013, Plaintiffs filed a cross motion to amend the Complaint. Id.  Plaintiffs, however, did not attach their proposed Amended Complaint to their filing.  D.E. 15.  On September 16, 2013, Plaintiffs filed the proposed Amended Complaint. D.E. 18.  On September 30, 2013, the Magistrate Judge then assigned to the case ordered the parties to submit supplemental briefing on futility in light of the Plaintiffs' late submission. D.E. 20.

Plaintiffs' proposed Amended Complaint seeks to add several new parties.  According to the proposed pleading, the new Plaintiffs would be:  Yvonne Robinson, Jesse R. Howell, Rose Ciros, Cheryle Moxey, Irene Goodwin, Robert McConnell, and Phillip Doran, acting on behalf of themselves and all other similarly situated individuals.  Proposed Am. Compl., D.E. 18, ¶ 1. Plaintiffs propose a class of "current and former owners and lessees of certain Kia Sorrento [sic] model year First generation 2002-2009 motor vehicles equipped with a Hyundai-manufactured 3.5L 24-valve DOHC V6 engine through the present."  Id.  ¶ 50.

The proposed Amended Complaint also seeks to add new counts against Defendants. Some of the counts are limited to certain state sub-classes.  The claims in the proposed Amended

Complaint are:

| | | |
|---|---|---|
| Count 1: | New Jersey Consumer Fraud Act, N.J.S.A 56:8-1 (on behalf of the New Jersey sub-class) |
| Count 2: | Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq. (on behalf of Plaintiff Jesse Howell and the Ohio sub-class) |
| Count 3: | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 et seq. (on behalf of Plaintiff Cheryl Moxey and the Florida sub-class) |
| Count 4: | South Carolina Consumer Protection Code, S.C. Code. Ann. § 37-1-101 et seq. (on behalf of Plaintiff Irene Goodwin and the South Carolina sub-class) |
| Count 5: | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Con. Stat. § 201-1 et seq. (on behalf of Plaintiff Robert McConnell and the Pennsylvania sub-class) |
| Count 6: | Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 (on behalf of Plaintiff Phillip Doran and the Washington State sub-class) |
| Count 7: | Breach of express warranty (all state sub-classes) |
| Count 8: | Breach of implied warranty of merchantability (all state sub-classes) |
| Count 9: | Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1) (all state sub-classes) |
| Count 10: | Declaratory relief (all state sub-classes) |
| Count 11: | Negligence (all state sub-classes) |
| Count 12: | Breach of contract (all state sub-classes) |
| Count 13: | Common law fraud (all state sub-classes) |

Proposed Am. Compl., D.E. 18, ¶¶ 125-218.

## III.  DISCUSSION

The threshold issue in resolving a motion to amend is the determination of whether the motion "is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure."  Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order."  Karlo, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).  As the Court has not entered a scheduling order in this case, Rule 15 governs the instant motion.

Under Rule 15(a)(2), a plaintiff may amend a pleading "when justice so requires."  The Court may deny a motion to amend the pleadings only where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").  Here, Defendants allege that the Court should deny Plaintiffs' motion because of the amendment's futility.  Because Defendants do not oppose the motion based on undue delay, bad faith, or undue prejudice, and there is no Rule 16 issue, the Court considers only whether it would be futile to allow Plaintiffs' proposed amendments.

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant."  Am. Corp. Society v. Valley Forge Ins. Co., 424 F. App'x 86, 90 (3d Cir. 2011) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)); see also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (3d ed. 2010).

To determine whether an amendment would be properly dismissed, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (establishing that a "court

4

may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); Harrison Beverage Co. v. Dribeck Importers, 133 F.R.D. 463, 468 (D.N.J. 1990) ("Futility of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. Fowler, 578 F.3d at 210 (citing Ashcroft v. Iqbal, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. Fowler, 578 F.3d at 210. All well-pleaded facts set forth in the pleading, and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. See Iqbal, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement").

Second, as stated above, a court determines whether a plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; accord Fowler, 578 F.3d at 211. As the Supreme Court instructed in Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79 (citations and internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

A court conducting a futility analysis may consider a limited record.  Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); accord West Penn, 627 F.3d at 97 n.6 (reiterating the rule and its limited exception for documents that are "integral or explicitly relied upon in the complaint").

Further, pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 223–24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

### a.   Ohio Consumer Sales Practices Act

In count two of the proposed Amended Complaint, Plaintiff Jesse Howell attempts to assert a claim under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, et seq., both on his own behalf and on behalf of a putative Ohio sub-class.

The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). "Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Id.   Therefore, plaintiffs bringing an OCSPA claim must allege that the defendant performed an act or omission that was unfair or deceptive, and that the alleged act "impacted [the plaintiffs'] decision to purchase the item at issue." Temple v. Fleetwood Enters., Inc., 133 F. App'x. 254, 265 (6th Cir. 2005).

6

### i.   The Ohio Sub-Class

Plaintiffs bringing class actions under the OCSPA are subject to the statute's class action notice requirement. Specifically, consumers may seek relief in a class action only if the defendant was sufficiently on notice that its conduct was deceptive or unconscionable under the statute at the time defendant committed the alleged acts. Ohio. Rev. Code § 1345.09(B); Marrone v. Philip Morris USA, Inc., 850 N.E.2d 31, 33 (Ohio Sup. Ct. 2006). Therefore, plaintiffs bringing claims on behalf of a class must demonstrate that either: "(1) the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based or (2) the alleged violation is an act or practice that a court already determined violated the OCSPA, and the court's decision was available for inspection before the transaction took place." In re Porsche Cars North Am., Inc., 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012).

For the proposed action to proceed as a class, the alleged conduct must be substantially similar to an act or practice previously declared to be deceptive under the OCSPA.  As a threshold matter, a plaintiff in a class action "must identify in his or her complaint the rule or case that satisfies [the statute's] notice requirements." See id. at 868. If a plaintiff does not identify "a rule or case in his or her complaint that satisfies Section 1345.09(B), dismissal of the claim as a class action is proper and the plaintiff may proceed in his or her individual capacity alone." See id. at 869.

Here, Plaintiffs have not identified a rule or case that is substantially similar to an act previously declared deceptive.  See Proposed Am. Compl., D.E. 18, ¶¶ 71-78. Because Plaintiffs fail to satisfy 1345.09(B), they are precluded from advancing an OCSPA claim on behalf of the Class.

### ii. Plaintiff Jesse Howell

The Court next examines the substance of Howell's claim to determine whether he, in his individual capacity, has stated a claim for relief. As explained above, to state a claim under the OCSPA, a plaintiff must allege that the defendant performed an act or omission that was unfair or deceptive, and that the alleged act "impacted [the plaintiffs'] decision to purchase the item at issue." Temple, 133 F. App'x. at 265.

A deceptive act is one that "has the tendency or capacity to mislead consumers concerning a fact or circumstance material to a decision to purchase the product or service offered for sale." Davis v. Byers Volvo, No. 11-817, 2012 WL 691757, at *8 (Ohio Ct. App. 2012). To be actionable as a deceptive act, the supplier's act must be "(1) false, and (2) material to a consumer's decision to purchase the product or service involved." Risner v. Regal Marine Indus., Inc., No. 11-191, 2014 WL 1270986 at *34 (S.D. Ohio Mar. 27, 2014). "A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not 'deceptive' within the meaning of the [OCSPA]. . . ." Id. Proof that an act is deceptive within the meaning of OSCPA, however, does not require proof of intent to deceive by the supplier. Funk v. Montgomery AMC/Jeep/Renault, 586 N.E.2d 1113, 1119 (Ohio Ct. App. 1990). The crucial aspect of whether an act is deceptive "is the likely effect on the mind of the consumer." Richards v. Beechmont Volvo, 711 N.E.2d 1088, 1090 (Ohio Ct. App. 1998).

Plaintiffs' proposed pleading alleges that "Kia represented to the Plaintiff Howell and other Ohio Class Plaintiffs that it had the best warranty for its vehicles and that Kia would stand behind its warranty." Proposed Am. Compl., D.E. 18, ¶ 137. Plaintiffs further allege that these "affirmative misrepresentations by Kia were material to the vehicle purchases, and were false statements of fact by Kia." Id. Courts have found that refusal to honor an express warranty is a

deceptive practice under the OCSPA.  See Brown v. Lyons, 332 N.E.2d 380, 385 (Ohio Ct. Com. Pleas 1974).  Therefore, Plaintiff Howell has sufficiently pled the deceptive act requirement under the OCSPA as a breach of warranty.

Next, Plaintiffs allege that "Defendants Kia and Hyundai each had knowledge and were aware that the Class vehicles suffered a common design defect regarding the power train crankshaft pulley bolt snapping, but failed to disclose this to Plaintiff Howell and the other Ohio Class Plaintiffs."   Proposed Am. Compl., D.E. 18, ¶ 137.  Omissions are actionable under the OCSPA if they "concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved."  Temple, 133 F. App'x. at 265–66. Under the liberal standards of Fed. R. Civ. P. 15, such allegations are sufficient to amend and add a claim under the OSCPA.

The Court finds that Howell has stated a claim in his individual capacity for violations of the OCSPA premised on Kia's alleged failure to disclose material facts.  Plaintiffs' motion to amend as to Howell's individual claim is therefore granted.

**b. Florida Deceptive and Unfair Trade Practices Act**

In Count III of the proposed Amended Complaint, Plaintiff Moxey and the "other Florida Class Plaintiffs" assert a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Plaintiffs claim that Kia "engaged in unlawful conduct, made affirmative misrepresentations or otherwise violated Florida's DUPTA."  Proposed Am. Compl., D.E. 18, ¶ 146.  Plaintiffs assert "Kia represented that the engine power train in the Class vehicle would last 100,000 miles." Id.

To state a claim for equitable relief under FDUTPA, Moxey must allege, at a minimum, that she has suffered damages because of the alleged dishonest act.  See Macias v. HBC of Fla., Inc., 694 So.2d 88, 90 (Fla. Dist. Ct. App. 1997) ("[I]n order for the consumer to be entitled to

any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act.").  Therefore, a claim for damages under FDUTPA requires the Plaintiff to allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortgage Corp. v. Barton, 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008).

FDUTPA shall be "construed liberally to promote the [policies] of protect[ing] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." See Fla. Sta. Ann. § 501.202(2).  An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001) (quoting Spiegel, Inc. v. Fed. Trade Comm'n, 540 F.2d 287, 293 (7th Cir. 1976)).  However, boilerplate conclusory allegation are insufficient to meet the pleading standard under FDUTPA.  See In re Pool Products Distrib. Mkt. Antitrust Litig., 946 F. Supp. 2d 554, 569 (E.D. La. 2013) (finding that plaintiff's allegations did not satisfy the pleading standard under FDUTPA where plaintiff's claimed that defendant's conduct affronted "Plaintiff's and Class Members' sense of justice, decency, or reasonableness, and Defendants' trade conduct violated state public policy" and other state and federal laws).

In order to plead a FDUTPA claim based on fraud, a plaintiff must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  See Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); see also Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322 (M.D. Fla.

2002).  Plaintiffs must state with "particularity the who, what, where, when, and how of any fraud or deceptive act committed by defendants."  <u>In re Pool Products</u>, 946 F. Supp. 2d at 570.

Here, Plaintiffs allege that although Defendant Kia knew of a design defect in the Sorento's power train crank shaft pulley bolt, Kia marketed the Sorento as "being of superior quality" and represented that the engine power train would last 100,000 miles.  Proposed Am. Compl., D.E. 18, ¶ 146.  Plaintiffs further allege that in 2008, Plaintiff Cheryl Moxey purchased a 2004 Kia Sorento with the mileage of 42,937.  <u>Id.</u> ¶ 107.  In addition, Plaintiffs claim that Moxey purchased an extended warranty and she was told "she was covered bumper to bumper."  <u>Id.</u>  These alleged misrepresentations well satisfy the standard under FDUTPA.  <u>See</u> <u>Dorestin v. Hollywood Imports, Inc.</u>, 45 So. 3d 819, 832 (Fla. Dist. Ct. App. 2010) ("[D]eception [under FDUTPA] occurs if there is a 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'").  Accordingly, the Court will grant Plaintiffs' motion to Amend to add Count III.

### c.   South Carolina Consumer Protection Code

In Count IV of the proposed Amended Complaint, Plaintiff Irene Goodwin and the proposed South Carolina sub-class seek to bring a claim under the South Carolina Consumer Protection Code ("SCCPC"), S.C. Code Ann. § 37-5-108.  Proposed Am. Compl., D.E. 18, ¶ 152.  Largely incorporating the same allegations for the other state claims, Plaintiffs allege that Defendants "engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the SCCPC." <u>Id.</u> at ¶ 155.  Defendants argue that Count IV of Plaintiffs' proposed Amended Complaint should be denied as futile, because the "claim fails on its face: the SCCPC applies only to credit transactions, and not consumer sales generally." Def.'s Br., D.E. 22, at 16.

Section 37-5-108 of the SCCPC limits its scope to:

(1) With respect to a transaction that is, gives rise to, or leads the debtor to believe will give rise to, a consumer credit transaction, if the court as a matter of law finds:
(a) the agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement; or
(b) any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable term or part, or so limit the application of any unconscionable term or part as to avoid any unconscionable result and award the consumer any actual damages he has sustained.

Under the SCCPC, a "consumer credit transaction" is defined as "a consumer credit sale (§ 37-2-104)[1] or consumer loan (§37-3-104)[2] or a refinancing or consolidation thereof, a consumer lease (§ 37-2-106)[3] or a consumer rental-purchase agreement (§ 37-2-701)." S.C. Code Ann. § 37-1-301(11).

---

[1] A "consumer credit sale" is a sale of goods, services, or an interest in land in which:
(a) Credit is granted by a person who regularly engages as a seller in credit transactions of the same kind,
(b) The buyer is a person other than an organization,
(c) The goods, services, or interest in land are purchased primarily for a personal, family or household purpose,
(d) Either the debt is payable in installments or a credit service charge is made, and
(e) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars.

S.C. Code Ann. § 37-2-104.

[2] A "consumer loan" is a loan made by a person regularly engaged in the business of making loans in which:
(a) the debtor is a person other than an organization;
(b) the debt is incurred primarily for a personal, family, or household purpose;
(c) either the debt is payable in installments or a loan finance charge is made; and
(d) either the principal does not exceed twenty-five thousand dollars or the debt is secured by an interest in land.

S.C. Code Ann. § 37-2-104.

[3] A consumer lease means a lease of goods: (a) Which a lessor regularly engaged in the business of leasing makes to a person, other than an organization, who takes under a lease

12

For Goodwin to set forth a claim under the SCCPC, she must allege that she engaged in a consumer credit transaction or believed that such a transaction would occur.  S.C. Code Ann. § 37-5-108.  The proposed Amended Complaint alleges Goodwin "purchased a used 2003 Kia Sorento on or about October 31, 2006 from Morris Motors, Inc."  Proposed Am. Compl., D.E. 18, at ¶ 88.  And yet, nowhere does the proposed Amended Complaint allege that Defendants extended any credit to Goodwin, or that Goodwin expected to engage in a consumer credit transaction either because of, or with, Defendants.  Therefore, the proposed Amended Complaint is bereft of any allegation that Goodwin's purchase was a consumer credit transaction; or that it gave rise to such a transaction; or that it induced Goodwin to believe that it would give rise to such a transaction.  As Goodwin's purchase was not a "consumer credit transaction" and only "consumer credit transactions" fall within the scope of SCCPA, Plaintiffs claim under SCCPA fails as a matter of law.

Plaintiffs argue that the "proposed state class representative for the State of South Carolina includes all of the common law causes of action and the Magnuson-Moss and contract actions." D.E. 24, at 10.  Even if true, that argument does not address the pleading deficiencies in Plaintiffs' claim under the SCCPC.

---

primarily for a personal, family or household purpose (b) In which the amount payable under the lease does not exceed twenty-five thousand dollars, and (c) Which is for a term exceeding four months. S.C. Code Ann. § 37-2-106.

While the proposed Amended Complaint does allege that the South Carolina Class Plaintiffs "purchase and/or leased Class vehicles for personal, family or household use," Proposed Am. Compl., D.E. 18, ¶154,  the only named Plaintiff in this case, Goodwin, purchased her vehicle.  Therefore, as the proposed Amended Complaint does not allege any named plaintiffs who did in fact lease a Class Vehicle, this provision is inapplicable.

Plaintiffs, moreover, allege that their claims are viable under the South Carolina Unfair Trade Practices Act ("SCUTPA"), which declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39–5–140(a) (1976).  However, Plaintiffs have not pleaded a claim under the SCUTPA. Therefore, that claim is not before the Court, and the Court will take no action at this time.

Accordingly, Plaintiffs' motion to amend the Complaint as to Count IV is denied as futile.

### d.  Pennsylvania Unfair Trade Practices and Consumer Protection Law

Count Five of the proposed Amended Complaint seeks to allege, on behalf of Plaintiff Robert McConnell and the Pennsylvania sub-class, a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL").  Proposed Am. Compl., D.E. 18, ¶ 164.

The PUTPCPL protects certain consumers from fraud and deceptive business practices. See 73 Pa. Con. Stat. § 201-3. The statute provides that any person "who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss" has standing to bring a private action if the injury results from a practice declared unlawful by the statute.  Id. § 201-9.2.  The PUTPCPL declares unlawful twenty specific practices that constitute either "unfair methods of competition" or "unfair or deceptive acts or practices" and one so-called "catchall" provision that prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Id. § 201-2(4)(i)-(xxi); Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013).  At a minimum, in order to state a claim under the PUTPCPL, the plaintiff must allege that: (1) he or she is a person as defined by the statute, (2) he or she purchased or leased goods or services primarily for personal, family or household purposes, (3) he or she suffered an ascertainable loss of money or property, (4) the defendant's conduct was deceptive or fraudulent, and (5) the

14

wrongful conduct occurred in trade or commerce.  See Belmont, 708 F.3d at 498. An additional

element, justifiable reliance, is required if the claim is made under the "catchall" provision. See

id.

### 1.  Person

The statute defines "person" as "natural persons, corporations, trusts, partnerships,

incorporated or unincorporated associations, and any other legal entities."  73 Pa. Con. Stat.

§ 201-2(2).  Plaintiffs clearly meet this prong.  Plaintiff McConnell and the proposed sub-class

members are all "persons" under the statute.

### 2.  Personal, Family or Household Purposes

The PUTPCPL protects only consumers who have purchased or used goods or services

for personal, family, or household purposes.  See id. at § 201-9.2(a).  Thus, a plaintiff seeking to

recover for a purchase made for a business purpose does not have standing to bring a claim.  See

Balderson v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3d Cir. 2002).  This

determination turns on the purpose of the purchase, rather than on the type of product purchased.

See Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 618 (E.D. Pa. 2010).

In the proposed Amended Complaint, Plaintiffs claim that all Pennsylvania sub-class members

purchased or leased the Class vehicles for personal, family or household use.  Proposed Am.

Compl., D.E. 18, ¶ 163.  This statement properly pleads this element of the cause of action.

### 3.  Ascertainable Loss

The PUTPCPL broadly defines losses.  The statute, for example, permits recovery for

"any ascertainable loss of money or property, real or personal, as a result of the use or

employment by any person of a method, act or practice declared unlawful." 73 Pa. Con. Stat. §

201-9.2(a).  These losses may not be hypothetical.  Rather, the plaintiff must be able to identify

money or property that he or she would have had but for the defendant's unlawful conduct. See Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013).

In this case, the Plaintiffs sufficiently allege that the Defendants' conduct caused them to suffer an ascertainable loss, in the form of monetary damages.  Proposed Am. Compl., D.E. 18, ¶ 168.   For example, the Plaintiffs claim that they suffered monetary damages in the form of the purchase price for each defective vehicle, as well as the costs they incurred in attempting to repair those vehicles.  Id.  The Plaintiffs also claim to have suffered total losses of their vehicles because the repair costs exceeded the value of the vehicles.  Id.  These alleged losses satisfy the ascertainable loss requirement of the PUTPCPL.[4]

### 4.  Unlawful Conduct

As noted above, the PUTPCPL identifies twenty specific prohibited unfair or deceptive acts.  73 Pa. Con. Stat. § 201-2(4)(i)-(xx).  Therefore, the plaintiff must adequately plead a violation of one or more of those acts.  See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151-52 (Pa. 2012). If the defendant's alleged conduct does not fit into one of the enumerated categories, the plaintiff may bring a claim under the catchall provision, which makes unlawful "any other fraudulent or deceptive conduct."  See 73 Pa. Con. Stat. § 201-2(4)(xxi).

If deceptive conduct is at issue, then plaintiff must show that the deceptive act has "the capacity or tendency to deceive."  See Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 548

---

[4] The Plaintiffs additionally claim that the loss of a working vehicle is an ascertainable loss caused by the Defendants' conduct.  Proposed Am. Compl., D.E. 18, ¶ 168.  Because the Court has already determined above that the Plaintiffs have adequately asserted ascertainable loss under the PUTPCPL, the Court need not determine whether this alleged loss is sufficient to state a claim.

(E.D. Pa. 2012).  Plaintiff must generally state these claims according to the pleading rules as set forth in Rule 8(a).  See Fed. R. Civ. P. 8(a); see also Belmont, 708 F.3d at 498.  Notably, if the plaintiff alleges fraudulent conduct under this provision, he or she need not plead those claims with particularity according to the heightened pleading standards for fraud under Rule 9(b). See Vassalotti v. Wells Fargo Bank, N.A., 732 F. Supp. 2d 503, 510-11 (E.D. Pa. 2010). The plaintiff, however, must prove the elements of common law fraud when alleging fraudulent conduct under the PUTPCPL.  See Levine v. First American Title Ins., 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010).

Under Pennsylvania law, common law fraud requires: (1) a misrepresentation, (2) that is material to the transaction, (3) that is made falsely, (4) that is intended to induce reliance, (5) justifiable reliance resulted, and (6) that justifiable reliance proximately caused injury.  Id.  In the context of this case, the justifiable-reliance prong essentially requires the plaintiff to demonstrate that he or she originally purchased the product because of the defendant's misrepresentation or deceptive conduct.  See id. at 467 (denying motion to dismiss where complaint stated that Plaintiffs knowingly "paid a premium for title insurance that was higher than the premium that was actually due [under the insurance policy]" expressly because of defendant's wrongful conduct and representations).

Here, Plaintiffs claim that Defendants' conduct violated three provisions of the PUTPCPL: "(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" "(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;" and the catchall provision. See Proposed Am. Compl., D.E. 18, ¶ 162.

17

In support of the first claim, Plaintiffs allege that Defendant Kia marketed the Class vehicle as being of superior quality, when Kia in fact knew that the Class vehicles were defective.  Id. ¶ 164.  In the second claim, Plaintiffs allege that Defendant Kia represented it would stand by its 100,000-mile warranty, but failed to honor it after the power train crankshaft pulley bolt snapped.  Id.  These allegations are sufficient to state a claim under subsections (vii) and (xiv), respectively. See In re Patterson, 263 B.R. 82, 94-95 (Bankr. E.D. Pa. 2001) (finding that car manufacturer led plaintiff to "believe that if she paid the [arrears] and provided the information that was requested, it would reinstate her contract and return her [car]. [Plaintiff relied on these representations,] which were knowingly false because Chrysler had not decided to reinstate her contract and return [her car despite Plaintiff's payment].")

The Plaintiffs also allege a violation of the catchall provision.  73 Pa. Con. Stat. § 201-2(4)(xxi).  Plaintiff McConnell expressly alleges that the Defendants engaged in fraudulent actions, as opposed to deceptive conduct.  Proposed Am. Compl., D.E. 18, ¶ 164.  Those fraudulent acts include failing to disclose known defects of the Class vehicles and marketing the Class vehicles to be of superior quality despite knowing of the defective power train crankshaft pulley bolt.  Id.   As a result, the proposed Amended Complaint pleads with specificity the alleged fraudulent statements, their materiality in terms of inducing Plaintiffs to purchase the Class vehicle, and damages in the form of monetary payments by Plaintiff McConnell and the Pennsylvania sub-class to purchase and repair the vehicles.  Proposed Am. Compl., D.E. 18 ¶ 164-65.  Accordingly, the Court concludes that the proposed Amended Complaint pleads this claim with sufficient particularity to satisfy the elements of Pennsylvania common law fraud. See Bennett, 40 A.3d at 151-52.

Finally, Plaintiff McConnell alleges that had the defective design in the Class vehicles been disclosed, the Pennsylvania class plaintiffs either would have not purchased the class vehicle or would have paid less for it.  Proposed Am. Compl., D.E. 18, ¶ 169.  Thus, the proposed Amended Complaint adequately pleads both reliance and a causal relationship between Defendants' alleged unlawful conduct and the Plaintiff's ascertainable loss.

### 5.  Trade or Commerce

The PUTPCPL defines trade and commerce, in relevant part, as "the advertising, offering for sale, sale or distribution of any services and any property." 73 Pa. Con. Stat. § 201-2(3). Consequently, all transactions, business dealings and exchanges of money are considered trade or commerce.  In this case, the selling and leasing of the Class vehicle constitutes trade and commerce because a sale took place. Therefore, the proposed Amended Complaint meets this prong as well.

Plaintiffs have sufficiently stated a claim under the PUTPCPL; thus, Plaintiffs' motion to amend the Complaint as to Count V is granted.

### e.  Washington Consumer Protection Act

In Count VI of the proposed Amended Complaint, both on his own behalf and on behalf of the Washington subclass, Plaintiff Phillip Doran alleges a violation of the Washington Consumer Protection Act.  Proposed Am. Compl., D.E. 18, ¶ 173.  Plaintiffs claim that Kia "engaged in unlawful conduct, made affirmative misrepresentations or otherwise violated WCPA."  Id.

The Washington Consumer Protection Act ("WCPA" or "the Act") declares unlawful any unfair or deceptive practices in the course of any trade or commerce.  Wash. Rev. Code Ann. § 19.86.020.  The purpose of the Act is to promote fair and honest competition in the marketplace and to defend consumers against unfair and dishonest behavior.  See Peterson v.

Kitsap Cmty. Fed. Credit Union, 287 P.3d 27, 37 (Wash. App. Div. 2012). In order to state a claim under the Act, the plaintiff must show: (1) an deceptive or deceptive act or practice, (2) that occurs in trade or commerce, (3) that affects the public interest, (4) thereby causing an injury to the plaintiff's business or property, and (5) a causal link between the unfair or deceptive act and plaintiff's injury. See Dewitt Const. Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1138 (9th Cir. 2002).

### 1. Unfair or Deceptive Act

A basic element of any WCPA claim is the existence of an unfair or deceptive act or practice. See Wash. Rev. Code Ann. § 19.86.020. The deceptive act must have the capacity to deceive or mislead the public. See McDonald v. OneWest Bank, FSB, 929 F. Supp. 2d 1079, 1097 (W.D. Wash. 2013). Whether the act was intended to deceive, and whether it actually succeeded in the deception, are not relevant considerations at this stage.[5] See Bloor v. Fritz, 180 P.3d 805, 815-16 (Wash. App. Div. 2008) ("To show that a party has engaged in an unfair or deceptive act or practice, a plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." (emphasis in the original) (internal quotations omitted). Also, the subject matter of the deceptive practice must be of "material importance" to the business at issue. See McDonald, 929 F. Supp. 2d at 1097.

Plaintiff Doran alleges that Defendants engaged in multiple unfair acts including: (1) not standing behind the warranty, (2) failing to disclose known defects of the Class vehicles, and (3)

---

[5] Indeed, whether the unfair act in fact deceived is relevant only for the public interest element of the claim. See McDonald, 929 F. Supp. 2d at 1097.

marketing the Class vehicles to be of superior quality despite knowing of a defect.  Proposed

Am. Compl., D.E. 18, ¶ 173.  Because the allegations in the proposed Amended Complaint

"sound in fraud," the pleadings must satisfy the particularity requirement of Rule 9(b).  Fed. R.

Civ. P. 9(b); <u>Fidelity Mortg. Corp. v. Seattle Times Co.</u>, 213 F.R.D. 573, 575 (W.D. Wash. 2003)

(holding that making false representations in reference to a material fact made with knowledge of

its falsity, and with intent to deceive, "sounds in fraud").  As a result, Plaintiffs must set forth

with sufficient particularity the statements they claim that are false, when and where that

information was provided to them, and how that information is false or misleading.  <u>See id.</u> at

575.

　　　In this case, the proposed Amended Complaint neither sets forth with particularity the

exact statements they claim are false, nor does the Complaint specify when or where that

information was given.  Plaintiffs, therefore, do not meet the pleading standard set forth under

the WCPA and Federal Rule of Civil Procedure 9(b).  For this reason, the WCPA claim in the

proposed Amended Complaint is improperly pled. <u>See id.</u> at 213 F.R.D. at 575.

　　　Because Plaintiffs have not sufficiently pled the unfair or deceptive act or practices

requirement as required under the WCPA, there is no need to further analyze the remaining

elements.[6]

---

[6] At first glance, granting Plaintiffs' motion to amend Counts III and V of the Complaint, and denying leave to amend Counts IV and VI of the Complaint, might appear inconsistent.  The claims under Count III are governed by the FDUTPA, which requires parties alleging fraud to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).  <u>See</u> <u>Stires</u>, 243 F. Supp. 2d at 1322.  And the allegations in Count VI under the WCPA also are subject to a heightened pleading standard.  But the allegations Plaintiffs set forth in support of Count III are sufficiently specific to support the fraud claim.  Indeed, the allegations in Count III contain sufficient relevant dates and specific details about Defendants' alleged fraudulently unfair and deceptive acts. <u>See</u> <u>supra</u>, III(b).  By contrast, Count VI lacks the necessary elements to sustain a fraud claim under the WCPA.

Plaintiffs' motion to amend the Complaint as to Count VI is therefore denied.

**IV. CONCLUSION**

Plaintiffs' Motion to Amend the Complaint is denied as to Counts IV and VI, denied in part and granted in part as to Count II, and granted as to Counts III and V.  Defendants' motion to dismiss is denied as moot without prejudice to Defendants' ability to move to dismiss.

*/s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**


Dated: October 14, 2014

---

That same analysis holds true for the Court's decision to permit amendment of Count V. For example, Pennsylvania law governs Count V, and includes a catch-all provision.  See 73 Pa. Con. Stat. § 201-2(4)(xxi); Fidelity, 213 F.R.D. at 575.  Under these specific circumstances, Plaintiff's three contentions satisfy the pertinent pleading requirements of Pennsylvania law. See Proposed Am. Compl., D.E. 18, ¶ 162; In re Patterson, 263 B.R. at 94-95; Bennett, 40 A.3d at 151-52.