<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **YVONNE ROBINSON, ROSE CIROS JESSE R. HOWELL, CHERYL MOXEY and ROBERT MCCONNELL, individually and on behalf of all others similarly situated,** | : : : : : : | |
| **Plaintiffs,** | : : | **Civil Action No. 13-006** |
| **v.** | : : : | **OPINION AND ORDER** |
| **KIA MOTORS AMERICA, INC., HYUNDAI MOTOR COMPANY, and XYZ CORP.,** | : : : : : | |
| **Defendants.** | : : | |

**SALAS, DISTRICT JUDGE**

This is a putative class action by named Plaintiffs Yvonne Robinson, Rose Ciros, Jesse R. Howell, Cheryl Moxey, and Robert McConnell (collectively, "Plaintiffs"), alleging design defects in model year 2002-2009 Kia Sorento automobiles containing 3.5L 24-valve DOHC V6 engines manufactured by Defendant Hyundai Motor Company ("Hyundai"). Before the Court is a motion by Defendant Kia Motors America, Inc. ("Kia") to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 44). For the reasons below, Kia's motion is granted in part and denied in part.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are consumers who purchased Kia Sorento model year 2002-2009 automobiles equipped with Hyundai-manufactured 3.5L 24-valve DOHC V6 engines. (D.E. No. 35, Amended Complaint ("Am. Compl.") ¶ 1).

Plaintiff Yvonne Robinson is a New Jersey resident. (*Id.* ¶ 16). Robinson alleges that she purchased a used 2005 Kia Sorento in October 2011. (*Id.* ¶ 64). Plaintiff Rose Ciros is also a New Jersey resident. (*Id.* ¶ 17). Ciros alleges that she purchased a new 2005 Kia Sorento in August 2006. (*Id.* ¶ 79). Plaintiff Jesse Howell is an Ohio resident, (*id.* ¶ 18), who alleges that he purchased a new 2005 Kia Sorento in December 2005, (*id.* ¶ 71). Plaintiff Cheryl Moxey is a Florida resident, (*id.* ¶ 19), who alleges that she purchased a used 2004 Kia Sorento in May 2008, (*id.* ¶ 98). Plaintiff Robert McConnell is a Pennsylvania resident. (*Id.* ¶ 20). McConnell alleges that he purchased a 2004 Kia Sorento in June 2004.[1] (*Id.* ¶ 88).

Plaintiffs allege that the engines in their Kia Sorento vehicles were "designed with a defective power train engine crankshaft pulley bolt and balancer." (*Id.* ¶¶ 1, 67, 74, 82, 93, 100). They allege that this design defect causes a breakdown and ejection of the front pulley, "which then snaps or shreds critical belts on the power train including the power steering belt, charging belt, and cooling belt which then causes catastrophic engine failure, loss of power steering, loss of the charging system, loss of the cooling system, and loss of control of the vehicle." (*Id.* ¶ 1). Plaintiffs refer to this defect as the "power train crankshaft pulley bolt problem." (*Id.* ¶ 2). They allege that Kia has refused to repair the power train crankshaft pulley bolt problem under two applicable vehicle warranties. (*Id.* ¶¶ 67-68, 75-76, 83, 93-95, 100-03).

Despite this defect, Plaintiffs allege that Kia has made "numerous affirmative statements touting the high-quality and reliability of the Class vehicles." (*Id.* ¶ 3). Plaintiffs allege that they relied on Kia's representations about its vehicles and their accompanying warranties. (*Id.* ¶ 3).

---

[1] Though the Amended Complaint does not specifically allege that McConnell's Kia Sorento was purchased "new," it alleges that the vehicle had only 45 miles on the odometer at the time of purchase, (Am. Compl. ¶ 88), and Kia does not dispute that the vehicle was purchased "new" for purposes of its motion. (D.E. No. 44-1, Brief of Defendant Kia Motors America, Inc. in Support of its Motion to Dismiss Plaintiffs' Corrected Amended Complaint ("Def. Mov. Br.") at 4).

They further allege that they suffered damages when Kia "refused to honor the warranty and repair the class vehicle." (*Id.*; *see also id.* ¶ 8).

In addition, Plaintiffs allege that "Defendant Kia, through (1) its own records of customer complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA) and other various sources, was well aware of the alarming failure rate of the power train crankshaft pulley bolt [problem] within the Class vehicles." (*Id.* ¶ 35).  Plaintiffs allege that, despite this knowledge, Kia did not notify consumers of the problem and "continued to manufacture and market the Class vehicles and represent that its warranty would cover the repairs of the power train crankshaft pulley bolt problem." (*Id.* ¶ 36).

On January 1, 2013, Plaintiffs filed their original Complaint in this action.  (D.E. No. 1, Complaint).  Kia filed a motion to dismiss on March 5, 2013, (D.E. No. 10), which the Court administratively terminated after Plaintiffs moved to amend their Complaint.  (D.E. dated 9/30/2013; *see also* D.E. No. 15).  On October 14, 2014, Magistrate Judge Michael A. Hammer granted in part and denied in part Plaintiffs' motion to amend their Complaint.  (D.E. No. 32, October 14, 2014 Opinion ("Op.") at 22).

On October 27, 2014, Plaintiffs filed an Amended Complaint asserting eleven causes of action: (1) the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.*; (2) the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*[2]; (3) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; (4) the

---

[2] Count 2 of the Amended Complaint is the only Count that is not labeled.  (*See* Am. Compl. at 30).  However, Defendant points out that this count is "nearly identical to the version of count two in the earlier proposed amended complaint, which references OCSPA and can only be read to allege an OCSPA violation." (Def. Mov. Br. at 2 n.2).  The Court agrees, and will construe Count 2 as an OCSPA claim.  The Court notes, however, that Judge Hammer only permitted Plaintiffs to amend the original Complaint to add OCSPA claims by Plaintiff Howell in an individual capacity, not on behalf of an Ohio sub-class.  (Op. at 7).

Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa. Con. Stat. § 201-1 *et seq.*; (5) express warranty; (6) implied warranty of merchantability; (7) the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(1); (8) declaratory relief; (9) negligence; (10) breach of contract; and (11) common law fraud.  (Am. Compl. ¶¶ 108-84).  Kia moved to dismiss Plaintiffs' Amended Complaint on November 24, 2014.  (D.E. No. 44). Plaintiffs opposed Kia's motion on December 22, 2014, (D.E. No. 45), and Kia replied on January 12, 2015, (D.E. No. 46).  This motion is now ripe for resolution.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though the pleading standard of Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In addition, the plaintiff's "short and plain statement of the claim" must "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In evaluating the sufficiency of a complaint, a court "must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Furthermore, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Porher*, 363 F.3d 229, 235 (3d Cir. 2004)).

## II.   DISCUSSION

### A. NJCFA

Plaintiffs' Amended Complaint alleges violations of the NJCFA on behalf of Plaintiffs Robinson, Ciros, and putative New Jersey Class Plaintiffs.  (Am. Compl. ¶¶ 108-116).  A claim pursuant to the NJCFA requires three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the loss.  *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 567 (2011).  The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. § 56:8–2.  An unlawful practice under the NJCFA may fall into one of three categories: affirmative acts, knowing omissions, and regulatory violations.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994).  In the context of a motion to dismiss, there are different pleading requirements

for affirmative acts versus omissions. *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *11-12 (D.N.J. July 21, 2011). "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Id.* at *11 (quoting *Cox*, 138 N.J. at 17-18). However, "when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Id.* at 12 (quoting *Cox*, 138 N.J. at 18).

In addition, NJCFA claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011). In the context of an NJCFA claim, Rule 9(b) requires a plaintiff to plead: (1) a specific false representation or omission of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) intention that it should be acted upon; and (5) ascertainable loss as a result of the misrepresentation. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

To support their NJCFA claim, Plaintiffs rely on allegations in their Amended Complaint that Kia made material misrepresentations regarding the Class vehicles on Kia's website and concealed the alleged defect despite knowledge of its falsity. (D.E. No. 45, Plaintiffs Brief in Opposition to Defendant Kia Motors America, Inc. Motion to Dismiss ("Pl. Opp. Br.") at 5-6; *see also* Am. Compl. ¶ 3). Kia argues that the alleged affirmative statements are not actionable because they constitute mere "puffery" and fail to meet the pleading requirements of Rule 9(b). (Def. Mov. Br. at 11-16). Kia further argues that the alleged omissions also fail to meet the pleading requirements of Rule 9(b) because Plaintiffs do not adequately allege that Kia knew of the alleged defect. (*Id.*). The Court addresses the parties' arguments below.

First, Plaintiffs allege that Kia "made affirmative representations" that violate the NJCFA. (Am. Compl. ¶ 111).  Specifically, they allege that Kia "represented to the Plaintiffs Robinson, Ciros, and other New Jersey Class Plaintiffs that it had the best warranty for its vehicles and that Kia would stand behind its warranty.  Kia also represented that the engine power train in the Class vehicles would last 100,000 miles." (*Id.*).  Plaintiffs point to language on Kia's website, which states, "[w]e have a lot of confidence in the quality and durability of every new Kia that rolls off the assembly line.  So much confidence, that we offer an industry-leading Kia 10-year or 100,000-mile warranty program." (*Id.* ¶ 3).  They further point to language on Kia's website stating that, the "Kia 10-year/100,000-mile warranty program* covers repairs made to precise Kia standards and requirements.  You can rest easy knowing your vehicle is in the skilled hands of Kia trained service technicians at your authorized Kia dealer." (*Id.*).

The Court agrees with Kia that its alleged affirmative representations are "not 'statements of fact,' but rather subjective expressions of opinion" constituting puffery.  *See Hughes*, 2011 WL 2976839 at *12.  The NJCFA distinguishes between actionable statements of fact and general statements about a product's quality that constitute unactionable puffery.  Puffery is not deceptive because "no one would rely on its exaggerated claims." *See In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *9–10 (D.N.J. Sept. 11, 2009); *Rodio v. Smith,* 123 N.J. 345, 352 (1991) (holding the slogan "You're in good hands with Allstate" was "nothing more than puffery" and did not constitute "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the Consumer Fraud Act"); *N.J. Citizen Action v. Schering–Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (holding phrases like "you . . . can lead a normal nearly symptom-free life again" are "not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable" under the NJCFA).

Here, Kia's statement about its "confidence" in its vehicles is a subjective statement of opinion, as is its statement that customers can "rest easy knowing [their] vehicle is in the skilled hands" of Kia technicians.  Because these statements are subjective opinions of product superiority, they do not rise above the level of puffery and cannot serve as the basis for a claim under the NJCFA.[3]  No reasonable consumer would rely on these claims.  *See Hughes*, 2011 WL 2976839 at *12; *In re Toshiba*, 2009 WL 2940081, at *9-10.

In addition, Plaintiffs fail to identify the alleged affirmative misrepresentations with the specificity required by Rule 9(b).  Plaintiffs generally point to statements on Kia's website about Kia's warranty programs, (*see* Am. Compl. ¶ 3), but they do not assert when those statements were published.  Plaintiffs also allege that Kia represented that it "would stand behind the warranty," but they have not directed the Court to any specific statements to that effect.  (*See id.*).  As a result, the Amended Complaint "does not allege the 'date, place or time' of this misrepresentation or otherwise inject some precision and 'some measure of substantiation' into [P]laintiffs' allegations of fraud."[4]  *See Hughes*, 2011 WL 296839 at *13 (internal citation omitted).  Furthermore, courts in this district have routinely dismissed NJCFA claims based on similarly unsubstantial allegations.  For example, in *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008), the court dismissed an NJCFA claim because "[w]ith regard to the statements on Volkswagen's

---

[3] Though Plaintiffs argue that whether a statement is "puffery" is a fact question that the Court should not decide on a motion to dismiss, courts in this district routinely dismiss NJCFA claims where the allegations at issue constitute puffery. *See, e.g.*, *In re Toshiba*, 2009 WL 2940081, at *7-10 (dismissing NJCFA claim on motion to dismiss); *N.J. Citizen*, 842 A.2d at 178 (same).  Moreover, even if the statements did not constitute puffery, they would still be subject to dismissal for failure to comply with Rule 9(b).

[4] Plaintiffs attempt to explain the "who, what, when, where, and why" of the alleged fraud in their opposition brief, (D.E. No. 45, Plaintiffs Brief in Opposition to Defendant Kia Motors America, Inc. Motion to Dismiss ("Pl. Opp. Br.") at 9-10), however they still fail to do so with specificity and may not amend their pleadings through their brief.  *See Penn ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Plaintiffs need to allege the "who, what, when, where, and why" of the alleged *misrepresentations*, which they have not done.  For example, Plaintiffs need to allege where and when the misrepresentations occurred and appeared.  It is not sufficient to simply allege that they took place in the "State of New Jersey."  (*See id.*).

website and in the 2002 Passat owner's manual, the Dewey [p]laintiffs do not allege when the statements were made or at what point—if ever—each [p]laintiff was exposed to one or more of the statements."  558 F. Supp. 2d at 526-27.  Similarly, in *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *4 (D.N.J. July 21, 2010), the court held that "broad assertions that [the d]efendant marketed its vehicles as being of superior quality when the class vehicles contained a known defect is not sufficiently specific."  2010 WL 2925913, at *3.  Such assertions did not provide the court with "the context of the alleged statements, and effect that any of the statements had on [the p]laintiffs."  *Id.*  As in *Dewey* and *Henderson*, Plaintiffs' allegations that certain statements were published on Kia's website fail to meet the specificity requirements of Rule 9(b).

Kia also argues that Plaintiffs have failed to plead any omission under the NJCFA because they have not adequately alleged Kia's knowledge of the defect.  (Def. Opp. Br. at 9-11).  In the context of the NJCFA, "[t]he bar for [pleading] omissions is lower."  *Skeen v. BMW of N. Am.*, No. 13-1531, 2014 WL 283628, at *10 (D.N.J. Jan. 24, 2014).  Here, Plaintiffs' allegations of omissions satisfy Rule 9(b)'s heightened pleading standard.

Plaintiffs allege that "Defendants' [sic] failed to disclose to Plaintiffs and other consumers that Kia Sorento model year First generation 2002-2009 motor vehicles . . . are predisposed to have the front pulley balancer bolt snap."  (Am. Compl. ¶ 2).  They further allege that "Defendant Kia did not fully and truthfully disclose to Plaintiffs Robinson, Ciros and other New Jersey Class Plaintiffs the true nature of the inherent design defect with the power train crankshaft pulley bolt, which was not readily discoverable by customers until years later."  *(Id. ¶* 113).  Courts in this district have upheld omissions-based NJCFA claims based on similar allegations.  For example, though the court in *Dewey* dismissed the plaintiffs' misrepresentation-based claims, it permitted

9

their omissions-based claims to proceed based on the allegation that "Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired." *Dewey*, 558 F. Supp. 2d at 527. The court in *Henderson* also permitted the plaintiffs' omission-based NJCFA claim to proceed based on the allegation that the defendant "omitted material information regarding the vehicles in question." 2010 WL 2925913, at *5-6. In *Henderson*, the plaintiffs alleged that "[d]efendants were aware that model years 2003 through 2005 of the Volvo XC90 T6 suffered from a common design defect resulting in transmission problems, but failed to disclose this to Plaintiffs and Class members." *Id.* The allegations in this case are substantially similar to the allegations in *Dewey* and *Henderson*.

Kia argues that Plaintiffs' omissions-based claims must fail because Plaintiffs have not adequately alleged Kia's knowledge of the defect. The Court disagrees. In addition to the allegations of knowledge described above, Plaintiffs further assert that Kia was aware of the defect based on (1) online customer complaints about the alleged problem, and (2) a technical service bulletin ("TSB") issued by Defendants. (Am. Compl. ¶ 3). Specifically, Plaintiffs direct the Court to specific websites that they allege contain complaints about the crankshaft pulley bolt problem. (*Id.*). They include detailed information regarding the names of the websites and the number and nature of the complaints. (*Id.*). In addition, Plaintiffs allege that a TSB issued in June 2007 that "identified the problem discussed in this complaint stating: '[t]he Crankshaft Pulley bolt may become loose, especially if improperly torqued during routine service.'" (*Id.* ¶ 30). At least one New Jersey Plaintiff, Robinson, purchased her vehicle after the June 2007 TSB was issued. Though TSB cannot alone be dispositive on the question of knowledge because it was directed at "2003-2004 MY Sorento models produced from 6/30/2002-1/28/2004" and neither New Jersey

Plaintiff purchased a model year 2003 or 2004 vehicle, its "publication adds further plausibility to [plaintiffs'] allegations that [d]efendants had knowledge of . . . the alleged defect[]." *See T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475, at *7 (D.N.J. Mar. 11, 2015). In sum, Plaintiffs have "alleged enough facts regarding [Kia's] knowledge of the defects . . . to survive a motion to dismiss." *See id*; *see also Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *8 (D.N.J. Aug. 16, 2010) (denying motion to dismiss omissions-based NJCFA claim to proceed where allegations were "substantially similar to those asserted by plaintiffs in . . . *Dewey*").

Thus, the Court determines that Plaintiffs have adequately pled unlawful conduct under the NJCFA through their allegations of Kia's knowing omissions. Kia does not contest the other elements of the NJCFA—ascertainable loss or causation—and the Court determines that these elements are also adequately pled. As a result, the Court denies Kia's motion to dismiss with respect to Plaintiffs' omission-based NJCFA claims.

### B.  Plaintiffs' Additional Fraud Claims

Because Plaintiffs have satisfied the requirements of Rule 9(b) with respect to their omission-based NJCFA claim, they have also pled fraud with particularity with respect to their remaining statutory fraud claims and common law fraud. *See Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (Rule 9(b) is applicable to PUTPCPL claims); *Ferron v. SubscriberBase Holdings, Inc.*, No. 08-760, 2009 WL 650731, at *5 n.4 , 6 (S.D. Ohio Mar. 11, 2009) (same for OCSPA claims); *Taylor v. Homecomings Financial, LLC*, 738 F. Supp. 2d 1257 (N.D. Fla. 2010) (noting some disagreement between Florida district courts regarding whether Rule 9(b) applies to all FDUTPA claims, but recognizing agreement that it applies to FDUTPA claims grounded in fraud). Accordingly, none of Plaintiffs' omission-based claims

11

under these statutes will be dismissed at this time for failure to comply with Rule 9(b).   However, Kia raises additional arguments why each of the state statutory claims should be dismissed, which the Court addresses below.

      1.  <u>OCSPA</u>

Count 2 of Plaintiffs' Amended Complaint appears to assert a claim under the OCSPA. (Am. Compl. ¶¶ 117-25).[5]  Kia argues that Plaintiffs' OCSPA claim must be dismissed because Judge Hammer precluded Plaintiffs from advancing this claim in his October 14, 2014 Opinion and Order.  (Op.).  (Def. Mov. Br. at 17).  Plaintiffs do not dispute that Judge Hammer precluded Plaintiffs from amending their Complaint to add an OCSPA claim on behalf of the class.  Instead, Plaintiffs argue in their brief that "[a]s a result of Judge Hammer's opinion, [Plaintiff Howell] is suing individually" under the OCSPA.  (Pl. Opp. Br. at 17).  Yet, as Kia points out, this argument is belied by Plaintiffs' allegations in the Amended Complaint that "Plaintiffs and Class Members bring this action to redress Defendant Kia's . . . violations of the . . . Ohio Consumer Sales Practices Act."  (Am. Compl. ¶ 49).  The Court notes that Count 2 states that Plaintiff Howell "individually incorporates" by reference the remainder of the Complaint, but this alone is not sufficient to clarify the nature of the claim—particularly given the fact Count 2 is not labeled and the Amended Complaint elsewhere references the OCSPA as a class claim.   Thus, because the Amended Complaint is not sufficiently clear regarding the nature of this claim, and because Judge Hammer explicitly barred Plaintiffs from bringing the OCSPA as a class claim, Count 2 must be dismissed for failure to state a claim upon which relief can be granted.  The Court does not address Kia's argument that the OCSPA is claim is also time-barred.  (*See* Def. Mov. Br. at 18-19).

---

[5] As noted above, Count 2 is not labeled in Plaintiffs' Amended Complaint.  (*See* Am. Compl. at 30.).

2.  FDUTPA

Count 3 of the Amended Complaint alleges violations of the FDUTPA.  Kia argues that any claim under this act is time-barred.  (Def. Mov. Br. at 20).  Specifically, Kia argues that the statute of limitations on a FDUTPA claim is four years and Florida Plaintiff Moxey bought her vehicle "on or around May 2008[,]" more than four years before the 2013 filing of the Complaint. (*Id.* (citing Am. Compl. ¶ 98)).  Plaintiffs do not respond to Kia's argument that the FDUTPA claim is time-barred in their brief.  However, the Amended Complaint alleges that "[a]ny applicable statute of limitations are tolled by Defendants' knowing and active concealment and denial of the facts alleged herein."  (Am. Compl. ¶ 106).

Kia is correct that the statute of limitations under FDUTPA is four years, and the delayed discovery rule does not apply.  *See Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 905 (11th Cir. 2013); *see also Majdipour v. Jaguar Land Rover N. Am.*, LLC, No. 12-7849, 2013 WL 5574626, at *4 (D.N.J. Oct. 9, 2013) ("There is no 'delayed discovery rule' applicable to FDUTPA claims.").  Here, Plaintiff Moxey purchased her vehicle more than four years prior to the initiation of this case.  (*See* Am. Compl. ¶¶ 98-99).  Her claim is therefore time-barred.

Moreover, Plaintiffs "cannot avoid the running of the limitations period by relying on [their] allegations that [Kia] conspired to conceal" the alleged defect.  *See Marlborough*, 505 F. App'x at 906.  Here, Plaintiffs merely rely on their pleading that "[a]ny applicable statute of limitations are tolled by Defendants' knowing and active concealment and denial of the facts alleged herein" does not alter the outcome of this claim.  (See Am. Compl. ¶ 106).  Plaintiffs provide no specific facts or allegations to support active concealment by Kia.  Moreover, any allegation that Kia "withheld information about the defect asserts only non-disclosure, not the type

of active and willful concealment required by Florida courts for tolling." *Majdipour*, 2013 WL 5574626, at *4 (citing *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir.2003)).  As a result, Count 3 of the Amended Complaint is dismissed as time-barred.

### 3. PUTPCPL

Count 4 of the Amended Complaint alleges a violation of the PUTPCPL.  (Am. Compl. ¶¶ 135-43).  Kia argues that this claim must be dismissed because the statute does not apply where a plaintiff has suffered only economic loss, and not personal injury.  (Def. Mov. Br. at 22).  Kia relies on *Werwinski v. Ford Motor Co.*, 286 F.3d 1661, 674 (3d Cir. 2002), in which the Third Circuit predicted that PUTPCPL claims would be barred by the Pennsylvania economic loss doctrine.

Though a "predictive ruling by the Third Circuit [on an issue of state law] is generally binding on the district court," it is no longer binding if "intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court." *Id.* (citing *Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971)).  Since *Werwinski* was decided, the Pennsylvania Superior Court has held that the doctrine of economic loss does not bar statutory fraud claims brought pursuant to the PUTPCPL.  *Knight v. Springfield Hyundai*, 81 A.3d 940, 951-52 (Pa. Super. Ct. 2013) ("The claims at issue in this case are statutory claims brought pursuant to the [P]UTPCPL, and do not sound in negligence.  Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to Knight's [P]UTPCPL claims.").  "The Superior Court's holding, unless and until it is overruled by the Pennsylvania Supreme Court, is the law of Pennsylvania." *Roberts v. NVR, Inc.*, No. 15-489, 2015 WL 3745178, at *4-7 (W.D. Pa. June 15, 2015) (following *Knight* and holding that economic loss doctrine did not bar PUTPCPL claims).  Accordingly, "because Pennsylvania courts have since ruled to the contrary, *Werwinski* no longer

14

has precedential effect," and the Court rejects Kia's argument that the economic loss doctrine bars the PUTPCPL claim in this case.  *See Kantor v. Hiko Energy, LLC*, No. 14-5855, 2015 WL 1650049, at *1 (E.D. Pa. April 14, 2015).

### C.  Express Warranty

Count 5 of the Amended Complaint alleges breach of express warranty on behalf of each of the state sub-classes.  (Am. Compl. ¶¶ 144-52).

There are two primary warranty periods at issue.  First, there is a 5-year/60,000-mile transferrable warranty (the "basic warranty").  (Am. Compl. ¶ 145; *see also* D.E. No. 44-2, Warranty and Consumer Information Manual[6] ("Warranty") at 3).  With some exceptions, the basic warranty covers "all components" of the vehicle.  (Am. Compl. ¶ 145; Warranty at 4).  In addition, there is a 10-year/100,000-mile non-transferable extended warranty covering components of the power train (the "power train warranty").  (Am. Compl. ¶ 145; Warranty at 3).  The power train warranty covers original owners only and begins upon expiration of the basic warranty.  (Am. Compl. ¶ 145; Warranty at 4).  With respect to the engine, the power train warranty covers the "[c]ylinder block, cylinder head, all internal parts, timing gear, seals and gaskets, valve cover, flywheel oil pan, oil pump, water pump and engine mounts."  (Warranty at 5).

As an initial matter, only Plaintiffs Ciros and McConnell have alleged defects that manifested within their warranty periods.  With respect to the remaining Plaintiffs, Robinson alleges that she purchased a pre-owned 2005 Kia Sorento, and that the alleged defect manifested

---

[6] When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record.  *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002).  Though Plaintiff did not attach the Warranty to the Amended Complaint, it is specifically referenced in the Amended Complaint and claims are based on it.  (*See* Am. Compl. ¶¶ 3, 146).  Accordingly, it is appropriate for the Court to consider the Warranty in deciding Defendant's motion to dismiss.

itself on or about January 2012.   (Am. Compl. ¶¶ 64, 66).  Because the alleged default occurred outside of the basic warranty timeframe and the power train warranty is non-transferrable, Robinson cannot assert an express warranty claim.  Second, Plaintiff Moxey alleges that she purchased a pre-owned 2004 Kia Sorento, and that the alleged defect manifested itself in January 2010.  (*Id*. ¶¶ 98, 99).  Thus, for the same reasons, Moxey also cannot assert an express warranty claim.  Plaintiff Howell alleges that he purchased a new 2005 Kia Sorento in December 2005, and that the alleged default manifested itself in October 2012.  (*Id*. ¶¶ 71, 74).  However, Howell does not allege the mileage at the time of the alleged defect manifestation, and therefore he has not adequately pled that it is subject to the 10-year/100,000 mile warranty.  (*See id.* ¶¶ 71-78).

As a result, Plaintiffs Ciros and McConnell are the only Plaintiffs who may plead express warranty claims.  Plaintiff Ciros alleges that she purchased a new 2005 Kia Sorento in August 2006, and that the alleged defect manifested in May 2010.  (*Id*. ¶¶ 79, 81).  Though the alleged default manifested itself within five years, there were over 60,000 miles on the vehicle at the time, which precludes Ciros from asserting a claim under the basic warranty.  (*Id*. ¶ 82). Therefore, Ciros may have a claim under the power train warranty only.  Plaintiff McConnell alleges that he purchased a 2004 Kia Sorento in June 2004 and the alleged defect manifested in September 2011, when the vehicle had 81,245 miles on the odometer.  (*Id*. ¶¶ 88, 93).  Because McConnell's defect manifested after 5 years and his mileage exceeded 60,000, McConnell may also have a claim under the power train warranty only.

### 1.   Choice of Law for Breach of Express Warranty Claim

A federal court sitting in diversity applies the forum state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  New Jersey has adopted the "most significant relationship" test for analyzing choice of law, which is outlined in the Restatement

(Second) of Conflict of Laws.  *Maniscalo v. Bro. Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013)

(citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008)); *see also* Restatement (Second) of

Conflict of Laws § 148 (1971).  This test requires a two-step analysis.  *P.V.*, 197 N.J. at 143.  First,

the Court must determine whether an actual conflict of law exists.  If no conflict exists, the law of

the forum state applies.  *Id.*  Second, if a conflict exists, the Court must determine which state has

the "most significant relationship" to the claim, by "weigh[ing] the factors set forth in the

Restatement section corresponding to the plaintiff's cause of action."  *Snyder v. Farnam Cos.*, 792

F. Supp. 2d 712, 717 (D.N.J. 2011).  Choice of law analysis is performed on a claim-by-claim

basis.  *Id.*

Only Plaintiffs Ciros and McConnell have alleged defects that manifested within their

warranty periods, and Plaintiff Ciros resides in New Jersey.  (Am. Compl. ¶ 17).  Therefore, the

Court would only need to analyze the applicable law for McConnell, who resides in Pennsylvania.

(*Id. ¶* 20).  Kia does not appear to address choice of law with respect to express warranty, but

argues that the law of the state in which each Plaintiff resides should apply to their implied

warranty claims.  (*See* Def. Mov. Br. at 29-31).  Plaintiff does not address choice of law for either

express or implied warranty.  As a result, the "[C]ourt will follow the lead of the parties and will

not engage in a choice of law analysis" with respect to the express warranty claim.  *See Cole v.

NIBCO*, No. 13-07871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015).[7]

2.   Analysis of Express Warranty Claim

Count Five of the Amended Complaint pleads breach of express warranty.  (Am. Compl.

¶¶ 144-52).  Generally, "an express warranty does not cover repairs made after the applicable time

---

[7] Even if the parties had briefed this issue, the Court would still not need to conduct a choice of law analysis.
A choice-of-law analysis is "unnecessary" when a claim "fails under either state's law."  *Roy v. Travelers
Ins.*, 579 F. App'x 94, 95 (3d Cir. 2014).  For the reasons described in the text, McConnell's claim would
fail under either state's law, and therefore a choice of law analysis would not be necessary.

has elapsed." *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 WL 900114, at *5 (D.N.J. Mar. 15, 2011) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir 1995)).  This general rule applies regardless of whether the defect existed prior to the expiration of the warranty.  *Id.* (citing *Duquesne Light*, 66 F.3d at 616).  Kia asserts three reasons why the Court should dismiss the express warranty claims, which the Court will address below.

Kia first argues that Plaintiffs' breach of express warranty claims must be dismissed because Plaintiffs fail to "quote a specific provision in the applicable warranty contract that was allegedly breached."  (D.E. No. 46, Reply Brief of Defendant Kia Motors America, Inc. in Further Support of its Motion to Dismiss Plaintiffs' Corrected Amended Complaint ("Def. Rep. Br.") at 10; *see also* Def. Mov. Br. at 22).  Specifically, Kia argues that the power train warranty does not cover the crankshaft pulley bolt because it is not expressly listed as a covered item.  (*Id.*).  Plaintiffs respond that the power train warranty covers "all internal parts" of the engine.  (Warranty at 4-5).  They argue that the Amended Complaint pleads that the crankshaft pulley bolt is an "internal part," which is sufficient for purposes of a motion to dismiss. (Am. Compl. ¶ 145; Pl. Opp. Br. at 13).

The Court agrees with Plaintiffs.  Plaintiffs specifically plead that there are two applicable warranties and the power train crankshaft pulley bolt is covered under both warranties because it is a "component" of the car and an "internal part" of the engine power train.  (Am. Compl. ¶ 145).[8] The Court does not need to consider whether the basic warranty covers the defect at issue because no Plaintiff has asserted a defect within the basic warranty's time and mileage parameters.  With respect to the power train warranty, Plaintiffs correctly note that its coverage extends to "all internal parts" of the engine power train.  (*See* Warranty at 4-5).   Accordingly, Plaintiffs' allegation that the power train crankshaft pulley bolt is an "internal part" of the engine power train

---

[8] Because no Plaintiff can assert a claim under the basic warranty, the Court does not need to consider whether that warranty would cover the defect at issue.

is specific and plausible, and the Court declines to dismiss the express warranty claim on this ground.

Second, Kia argues that the express warranty claim must be dismissed because "plaintiffs' claims are grounded expressly in an alleged <u>design</u> defect, yet the warranty that forms the basis for plaintiffs' claims does not cover the design of the vehicle or any of its components."  (Def. Mov. Br. at 24).  Specifically, Kia points to language in the Amended Complaint where Plaintiffs use the phrase "defective design," and argue that design defects are not covered by the Warranty because the Warranty explicitly limits its coverage to "defects in material or workmanship."  (Def. Mov. Br. at 24; *see also* Am. Compl. ¶ 4; Warranty at 4).  In response, Plaintiffs argue that Kia's "'spin' of the wording in its warranty of 'material and workmanship' misconstrues the plain meaning of the warranty."  (Pl. Opp. Br. at 13).

The Court agrees with Kia that Plaintiffs' breach of express warranty claim cannot survive because the warranty covers "defects in material or workmanship" and Plaintiffs allege a defect in design.  (*See* Am. Compl. ¶ 4; Warranty at 4).  In the introduction to the Amended Complaint, Plaintiffs explicitly state that "[i]t is alleged that these engines were *designed* with a defective power train engine crankshaft pulley bolt and balancer.  The *design* of the engine balancer sticks out too far and weighs too much, breaking off the spring guide pin and causing the front pulley bolt to break and the front pulley to eject."  (Am. Compl. ¶ 1) (emphases added).  Similarly, they allege that "[a]s a result of the power train crankshaft pulley bolt problem and *defective design*, Defendants have benefited."  (*Id.* ¶ 4) (emphases added).  Plaintiffs further allege that Kia had knowledge "of this concealed *design* problem," (*id.* ¶ 10), and allege that "[t]he power train crankshaft pulley bolt *design problem* creates a serious safety concerns [sic]," (*id.* ¶ 29). (emphases added).  Throughout the Amended Complaint, Plaintiffs consistently characterize the

19

defect that is the basis of their claims as a design defect.[9]  They even explain the alleged design

flaw—that "the engine balancer sticks out too far and weighs too much."  (*Id.* ¶ 1).  Accordingly,

Plaintiffs cannot reasonably dispute (and do not appear to dispute) that they are alleging a default

in the *design* of the power train crankshaft pulley bolt.  (*See* Pl. Opp. Br. at 13 (arguing "[t]he

admitted defect was not latent but inherent in the faulty design")).  Rather, they argue that the

alleged *design defect* is covered by the "materials and workmanship" power train warranty because

the power train crankshaft pulley bolt is in an "internal part" of the engine.  (*See id.* at 13; *see also*

Warranty at 4).

Plaintiffs' argument that design defects are covered by the power train warranty fails.  As

an initial matter, the language of the warranty states that "Kia warrants that your new Kia Vehicle

is free from defects in material or workmanship, subject to the terms and conditions set forth in

this manual."  (Warranty at 4).  Plaintiffs have not pointed to any language in the warranty stating

that it covers defects in design.  Moreover, other courts that have construed "material or

workmanship" warranties have found that they do not cover design defects.  *See, e.g.*, *Nelson v.*

*Nissan N. Am., Inc.*, No. 11-5712, 2014 WL 7331075, at *2-3 (D.N.J. Dec. 19, 2014); *Troup v.*

*Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013); *Bruce Martin Constr., Inc. v. CTB, Inc.*,

735 F.3d 750 (8th Cir. 2013); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003).

*Nelson* is particularly on point.  *See* 2014 WL 7331075, at *2-3.  There, the warranty at issue

covered "defects in materials and workmanship."  *Id.*  The court in *Nelson* determined that because

---

[9] (*See also* Am. Compl. ¶ 39) ("The existence of the power train crankshaft pulley bolt problem or *design*
problem was within Defendants Hyundai and Kia's exclusive knowledge and control.") (emphasis added);
(*id.* ¶ 42) ("When the crankshaft pulley bolt failure occurs during the warranty period, Defendant Kia
discloses neither the power train crankshaft pulley bolt *design* problem . . . .") (emphasis added); (*id.* ¶ 58)
("Common legal and factual questions include, but are not limited to . . . whether the power train crankshaft
pulley bolt in the Class vehicles contain a *design defect* [and] whether the defective power train crank bulley
bolt vehicle design is common to all Class vehicles.") (emphases added).

the warranty did not define "materials" or "workmanship," the court would assign the terms their ordinary meaning. *Id*. It further noted the Third Circuit's statement that, "absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials." *Id*. As the Third Circuit observed:

> Webster's Dictionary defines 'workmanship' as 'the art or skill of a workman,' or 'the execution or manner of making or doing something.' Webster's Third New International Dictionary Unabridged 2635 (1961). A 'workman,' or 'workingman,' is defined as 'one who works for wages usually at manual labor.' *Id*. As made clear by its focus on the 'manual' 'execution' of a product, the definition of 'workmanship' presupposes that the product being made or assembled has already been designed. Design is an earlier and distinct phase of product production not captured by the workmanship warranty.

*Id*. (quoting *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 F. App'x 180, 184 (3d Cir. 2012)). Here, as in *Nelson*, Plaintiffs do not allege a defect in material or workmanship. Significantly, they are not arguing that the engine was properly designed but defectively manufactured or assembled. Rather, they argue that the defect stems directly from the flawed engine design. As a result, Plaintiffs are precluded from asserting an express warranty claim under a warranty that, by its clear terms, covers "materials and workmanship."

Plaintiffs' alternative pleading that the warranty is "unconscionable and unenforceable" is also without merit. (*See* Am. Compl. ¶ 149). Courts in this district have routinely held that there is nothing unconscionable or unenforceable about similar vehicle warranties. *See, e.g.*, *Majdipour*, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013) ("There is nothing substantively unconscionable about a 6 year/75,000 mile warranty per se."); *see also Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012) ("[T]here is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty."). Plaintiffs' allegation that the warranty here was unconscionable is based solely on statements that "members of the Classes had no meaningful

choice in determining these time limitations" and that a "gross disparity in bargaining power existed between Kia and Class members." (Am. Compl. ¶ 150). However, "allegations of unequal bargaining power with respect to the terms of the warranty are . . . insufficient to state a claim for unconscionability." *Nelson*, 894 F. Supp. 2d at 566; *see also Alban*, 2011 WL 900114, at *1 ("[R]egarding the duration of [the plaintiff's] warranty, the lack of a meaningful choice in determining the duration, and disparate bargaining power are conclusory and therefore cannot support a similar finding of unconscionability."). Thus, Plaintiffs' attempt to plead a breach of warranty claim by alleging unconscionability fails.

Because the Court determines that Plaintiffs' express warranty claims must be dismissed, it does not need to address Kia's additional argument that these claims should be dismissed because all defects manifested themselves outside of the warranty period. (Def. Mov. Br. at 12). Nevertheless, as discussed above, the Court does not find this argument persuasive because two Plaintiffs, Ciros and McConnell, alleged defects that occurred within their respective warranties.

### D. Implied Warranty Claim

Count Six of the Amended Complaint alleges a breach of the implied warranty of merchantability on behalf of all state subclasses. (Am. Compl. ¶¶ 153-57).

#### 1. Choice of Law for Implied Warranty Claim

Plaintiffs concede that the implied warranty is limited to the term of the express warranty. (Pl. Opp. Br. at 14). As discussed above, only Plaintiffs Ciros and McConnell have alleged malfunctions within the express warranty period, and therefore they are the only Plaintiffs who may state an implied warranty claim. (*See* Am. Compl.). Because Plaintiff Ciros resides in New Jersey, a choice of law analysis is only relevant Plaintiff McConnell, who resides in Pennsylvania.

Again, however, the Court will follow the lead of the parties and not conduct a choice-of-law analysis.[10]

### 2.   Analysis of Implied Warranty Claim

"The implied warranty of merchantability ensures that a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used." *Henderson*, 2010 WL 2925913, at *9 (citing N.J.S.A. § 12A:2–314).  With respect to cars, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects." *Id.* (quoting *Carlson v. General Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)).

Kia argues that this Count must fail "[b]ecause Kia properly and lawfully limited the temporal scope of any implied warranties to that of its express warranty."  (Def. Mov. Br. at 28).  Indeed, the warranty states:

> **THE DURATION OF ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS, ARE LIMITED RESPECTIVELY TO THE DURATION OF THESE EXPRESS WARRANTIES.**

(Warranty at 11).  However, Kia's argument regarding Plaintiffs' implied warranty claim is premised on its earlier argument that all of Plaintiffs' defects manifested themselves outside of the warranty period.  As discussed above, Kia is incorrect in asserting that all of Plaintiffs' defects manifested themselves outside of the warranty period.  Plaintiff Ciros alleges that she purchased a

---

[10] The Court notes that even if it conducted a choice of law analysis, there would be no difference in outcome.  Under the first step of the choice of law analysis, the Court must determine whether a conflict exists.  *P.V.*, 197 N.J. at 143.  Here, no conflict exists between New Jersey and Pennsylvania law with respect to the implied warranty of merchantability.  Both states have adopted the section of the Uniform Commercial Code providing that the implied warranty of merchantability is "a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used."  13 Pa.C.S. § 2314; N.J.S.A. § 12A:2-314.  The parties have cited to no conflict between the state laws, and the Court does not find that any exists.  *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 372 n.4 (D.N.J. 2004) (finding "no actual conflict" between New Jersey and Pennsylvania law on the implied warranty of merchantability).

new Kia Sorento in August 2006, and that the alleged default manifested in May 2010.  (Am. Compl. ¶¶ 79, 81).  Similarly, Plaintiff McConnell alleges that he purchased a new Kia Sorento in June 2004, and that the alleged defect manifested in September 2011.  (*Id.* ¶¶ 88, 93).  Ciros and McConnell are both original owners.  (*See id.* ¶¶ 79, 88).  Therefore, Ciros's and McConnell's defects occurred within the 10-year power train warranty period.  Kia raises no other basis for dismissing Plaintiffs' breach of implied warranty claim for these Plaintiffs.[11]  As a result, Kia's motion to dismiss Count 6 of the Amended Complaint is denied with respect to Plaintiffs Ciros and McConnell and their respective sub-classes, and granted with respect to the remaining Plaintiffs and sub-classes.

### E.  Magnuson-Moss Warranty Act

Count 7 of Plaintiffs' Amended Complaint pleads a violation of the MMWA.  Magnuson–Moss is "a remedial statute designed to protect the purchasers of consumer goods from deceptive warranty practices."  *Dzielak*, 26 F. Supp. 3d 304, 331 (D.N.J. 2014) (quoting *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001) (citation omitted)).  Under the statute, "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."  15 U.S.C. § 2310.  "Magnuson–Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims."  *Cooper*, 2008 WL 4513924, at *6 (citing *In re Ford Motor Co. Ignition Switch Prods. Liability Litig.*, 19 F. Supp. 2d 263, 267 (D.N.J. 1998)).

---

[11] Defendant argues that any breach of implied warranty claim by Plaintiffs Howell and Moxey must be barred by their respective states' privity requirements.  (Def. Mov. Br. at 29-32).  However, because neither Howell nor Moxey have asserted a defect within the within their warranty period, the Court does not address this argument.

Here, because the Court is denying Kia's motion to dismiss the implied warranty claims by Plaintiffs McConnell and Ciros, these Plaintiffs' MMWA claims survive as well.  *See Dzielak*, 26 F. Supp. 3d at 332 (holding that because "state-law causes of action for breach of express and implied warranties are legally sufficient . . . . [t]he MMWA claim stands with them"); *Greene v. BWM of N. Am.*, No. 11-4220, 2013 WL 5287314, at *3 (D.N.J. Sept. 17, 2013) ("[Plaintiff] has stated a claim for breach of the implied warranty of merchantability under the New Jersey UCC. Accordingly, the Court will DENY [Defendant's] motion to dismiss Count I.").  Accordingly, Kia's motion to dismiss Count 7 is denied.

### F.  Negligence

Count 9 of the Amended Complaint asserts an alternative cause of action for negligence. (Am. Compl. ¶¶ 169-72).  Plaintiffs readily admit that their negligence claim is pled in the alternative, acknowledging that "[i]f Plaintiffs have a contract claim then they do not have a negligence claim."   (Pl. Opp. Br. at 18).  Indeed, as the parties recognize, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002).[12]

The Court has ruled that Plaintiffs Ciros and McConnell have stated a contract claim for breach of warranty.  Though it dismissed the warranty claims against the remaining Plaintiffs, this ruling was based on the fact that those Plaintiffs' defects manifested outside the warranty period—

---

[12] The economic loss doctrine bars Plaintiffs' negligence claims under either New Jersey law or the laws of the states in which Plaintiffs reside.  *See Bracco*, 226 F. Supp. 2d at 562 (noting economic loss doctrine applies to negligence claims in New Jersey); *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 221 (3d Cir. 2010) (same for Pennsylvania); *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 325 (S.D. Ohio 2007); *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399, 406-07 (Fl. 2013) (noting economic loss doctrine applies to negligence claims arising in products liability context).

not because the remedy was unavailable.  Because Plaintiffs' have alleged no harm other than economic loss which may be recovered under warranty law, Plaintiffs' claim for negligence must be dismissed as to all Plaintiffs and sub-classes.  *See Noble v. Porsche Cars N. Am., Inc.,* 694 F. Supp. 2d 333, 336 (D.N.J. 2010) (noting where a plaintiff's "only alleged injury is to his vehicle . . . [tort claims] would be precluded by the economic loss doctrine").

### G.  Breach of Contract Claim

Count 10 of Plaintiffs' Amended Complaint alleges breach of contract.  (Am. Compl. ¶¶ 173-76).  Kia argues that Plaintiffs' breach of contract claim "fails because the claimed 'contract' is nothing more than the express warranty at issue in count five, and thus the breach of contract claim is duplicative, time-barred, and subject to dismissal."  (Def. Mov. Br. at 41).  Plaintiffs do not respond to this argument or offer any reason why their breach of contract claim should survive.

The Court agrees with Kia that Plaintiffs' breach of contract claim fails as duplicative. Plaintiffs have identified no contract between the parties other than the express warranty alleged in Count 5.  Accordingly, this claim must be dismissed as duplicative.  *See Laney v. Am. Standard Cos.*, 2010 WL 3810637, at *1 n.2 (D.N.J. Sept. 23, 2010), *rev'd on other grounds* ("[Plaintiff's] breach of contract claim appears to be duplicative of his breach of express warranty claim. . . . Since they are identical claims, the court considers them as a single claim and dismisses [p]laintiff's breach of contract claim.").

### H.  Declarative and Injunctive Relief

Count 8 of Plaintiffs' Amended Complaint pleads a claim for declaratory relief in accordance with the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Am. Compl. ¶¶ 166-68).  In addition, each of Plaintiffs' causes of action seeks declaratory and injunctive relief, including a nationwide recall of the applicable model years of the Kia Sorento.

26

Kia argues that a nationwide recall is not available as a remedy because state law authority is preempted by the National Traffic and Motor Vehicle Safety Act of 1966 ("NTMVSA").  (Def. Mov. Br. at 35-37).  Alternatively, they argue that the remedy is barred by the doctrine of primary jurisdiction.  (Def. Mov. Br. at 37-38).  Plaintiffs do not respond substantively to these arguments, but rather argue that the "various causes of action pled in the complaint include injunctive relief." (Pl. Opp. Br. at 18).

As an initial matter, Count 8 of the Complaint seeks injunctive and declaratory relief that is not tied to any particular cause of action.  Faced with such counts, some courts have dismissed them on the grounds that "[c]laims for injunctive and declaratory relief are remedies and not independent causes of action."  *See, e.g.*, *Mulqueen v. Energy Force, LLC*, No. 13-1138, 2013 WL 6051020, at *11 (M.D. Pa. Nov. 14, 2013).  Others have permitted the counts to withstand a motion to dismiss as long as underlying substantive claims survive as well.  *See, e.g.*, *Oshinsky v. New N.Y. Football Giants, Inc.*, No. 9-1186, 2009 WL 4120237, at *10 (D.N.J. Nov. 17, 2009).

Here, Plaintiffs have sought injunctive and declaratory relief in each of their independent causes of action.  Therefore, whether the Court dismisses Count 8 will not affect the relief that Plaintiffs may seek, and the Court declines to do so.  *See Mendez v. Avis Budget Grp., Inc.*, No. 11-6537, 2012 WL 1224708, at *14 (D.N.J. Apr. 10, 2012) ("Defendants assert that [p]laintiff's count for declaratory relief states no separate cause of action and should be dismissed as duplicative of the other counts in [p]laintiff's Complaint. . . . Since the Court finds that [p]laintiff has sufficiently alleged the claims upon which the requests for injunctive relief and declaratory relief are premised, the Court declines to limit [p]laintiffs' access to these remedies at this stage.").

Next, the Court considers Kia's argument that the nationwide recall Plaintiffs seek is not an available remedy because state law authority is preempted by the NTMVSA and the doctrine

of primary jurisdiction is a bar.  With respect to preemption, Kia argues that "[i]n respect of recalls, state law authority has been preempted by the comprehensiveness of the [NTMVSA]."  (Def. Mov. Br. at 35).  Specifically, it argues that "[a]lthough the Safety Act does not contain an express preemption provision, courts repeatedly have reached this conclusion under conflict preemption principles."  (Def. Mov. Br. at 36 (citing *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944-45 (S.D. Ind. 2001)).  With respect to the doctrine of primary jurisdiction, Kia argues that (1) this case involves a subject matter within the special expertise of an agency and (2) there is a need to promote uniformity in administrative policy to avoid inconsistent results between courts and the agency.

Yet the law on either issue is not as clear as Kia presents.  Though *Bridgestone/Firestone* and several other cases have held that a nation-wide recall is preempted, other courts have reached the opposite result.  *Compare, e.g.*, *Bridgestone/Firestone*, 153 F. Supp. 2d at 948, *and Cox House Moving, Inc. v. Ford Motor Co.*, No. 06-1218, 2006 WL 2303182, at *9 (D.S.C. Aug. 8, 2006), *with In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194-1200 (C.D. Cal. 2010), *Chamberlain v. Ford Motor Co.*, 314 F. Supp. 2d 953, 958-61 (N.D. Cal. 2004), *and Marsikian v. Mercedes Benz USA, LLC*, No. 08-4876, 2009 WL 8379784, at *6-7 (C.D. Cal. May 4, 2009).  In addition, Defendant has pointed to no cases barring the specific relief sought here on the grounds of primary jurisdiction.  In fact, in *In re Toyota*, the court specifically declined to apply the primary jurisdiction doctrine to strike the request for injunctive relief.  *In re Toyota*, 754 F. Supp. 2d at 1199.

In any event, given that Plaintiffs seek injunctive and declaratory relief as part of their surviving claims, there is no need for the Court to limit Plaintiffs' remedies at this stage.  *See Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 547 (S.D. W. Va. 2014) ("The claims currently

before the Court are individual claims based upon breach of warranty and a variety of state-law causes of action, which this Court is well-equipped to handle. Whether or not this Court should or will issue a nationwide recall or free replacement program is an issue better addressed at a later time.").  As a result, Kia's motion to dismiss is denied to the extent it seeks to curtail the remedies of declaratory or injunctive relief at this stage.

## IV.    CONCLUSION

For the reasons above, it is on this 11th day of September 2015,

**ORDERED** that Kia's motion to dismiss Plaintiffs' Amended Complaint, (D.E. No. 44), is granted *with prejudice* with respect to Counts 2, 3, 5, 9, and 10; and it is further

**ORDERED** that Kia's motion to dismiss Plaintiffs' Amended Complaint, (D.E. No. 44) is granted *with prejudice* with respect to Counts 6 and 7 as to Plaintiffs Robinson, Howell, and Moxey, and *denied* with respect to Plaintiffs Ciros and McConnell; and it is further

**ORDERED** that Kia's motion to dismiss Plaintiffs' Amended Complaint, (D.E. No. 44), is *denied* with respect to Counts 1, 4, 8, and 11; and is further

**ORDERED** that the Clerk of the Court shall terminate D.E. No 44.

**SO ORDERED.**

*s/ Esther Salas*_____
Esther Salas, U.S.D.J.