Law Office of Shmuel Klein PA
Attorney for Plaintiffs
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____x
YVONNE ROBINSON, ROSE CIROS, JESSE R. HOWELL
individually and on behalf of all others similarly situated,
Plaintiffs,
vs.
KIA MOTORS AMERICA INC; KIA MOTORS
MANUFACTURING GEORGIA INC., KIA MOTORS
CORPORATION, Kia Motors Co., Ltd.,
SEOUL SOUTH KOREA COMPANY(S),
Hyundai Motor Company, XYZ CORP
Defendants.                                             Case No.: 13-00006 ES-SCM
_____x


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION

## FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS




Law Office of Shmuel Klein PA
Attorney for Plaintiffs
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510

TABLE OF CONTENTS                                                                          Page

TABLE OF AUTHORITIES ............................................................................................ iv

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND...............................................................................................2

A. Plaintiffs' Allegations and Pre-Litigation Investigation. ................................................2

B. Mediation and Confirmatory Discovery …..........................................................................4

III. The Settlement Agreement …...........................................................................................6

A. Original Purchasers …......................................................................................................6

B. Used Purchasers …............................................................................................................7

C. The Preliminary Approval Order and Response by Settlement Class Members …..............................8

IV. ARGUMENT.......................................................................................................................8

A. The Fee Request Should be Evaluated Under the Lodestar Method........................................9

B. Class Counsel's Lodestar Figure is Reasonable. .................................................................10

C. The Gunter Factors Confirm the Reasonableness of the Fee Request...............................  12

1.  The Size of the Fund Created and the Number of Persons Benefitted. …..........................13

2. The Presence or Absence of Substantial Objections by Members of the Class..................................13

3. The Skill and Efficiency of the Attorneys Involved. .......................................................13

4. The Complexity and Duration of the Litigation.............................................................13

5. The Risk of Nonpayment. …............................................................................................14

6. The Amount of Time Devoted to the Case by Class Counsel...........................................14

7.  The Awards in Similar Cases...........................................................................................15

D. The Requested Fees Are Reasonable Under a Cross-Check. ...........................................15

E. Plaintiffs' Counsel's Expenses Should be Approved. .......................................................16

F. The Requested Incentive Awards Should be Approved. ....................................................16

IV. CONCLUSION.................................................................................................................37

TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

Boone v. City of Phila., 668 F. Supp. 2d 693 (E.D. Pa. 2009)....................................................30

Bredbenner v. Liberty Travel, Inc., No. 09-905 (MF), No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663
(D.N.J. Apr. 8, 2011)....................................................................................................33

Briggs v. Hartford Fin. Servs. Group, Inc., No. 07-CV-5190, No. 07-CV-5190, 2009 U.S. Dist. LEXIS
66777 (E.D. Pa. July 31, 2009)....................................................................................29

Careccio v. BMW of N. Am. LLC, Case No. 08-2619, Case No. 08-2619, 2010 U.S. Dist. LEXIS
42063 (D.N.J. Apr. 29, 2010) …...................................................................................31

Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321 (D.N.J.1997)..............................................15

Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546 (D.N.J.  2010)................................................. 14, 15

Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000) …......................................................

Hall v. AT & T Mobility LLC, No. 07-5325(JLL), 2010 WL 4053547, 2010 U.S. Dist. LEXIS 109355
(D.N.J. Oct. 13, 2010) ...............................................................................................22

Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146 (CCC), No. 09-4146 (CCC), 2013 U.S. Dist.
LEXIS 46291 (D.N.J. Mar. 22, 2013)...................................................................................

Henderson v. Volvo Cars of N. Am., LLC, No. CIV.A. 09-4146 CCC, 2013 WL 1192479, 2013 U.S.
Dist. LEXIS 46291 (D.N.J. Mar. 22, 2013)................................................................................

Hensley v. Eckerhart, 461 U.S. 424 (1983).....................................................................................16

In re AT&T Corp. Secs. Litig., 455 F.3d 160 (3d Cir.  2006) ........................................................ 14, 19

In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001) …......................................................................18

In re Datatec Sys. Sec. Litig., No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28,
2007)..............................................................................................................................32

 In re GNC Shareholder Litig., 668 F. Supp. 450 (W.D. Pa. 1987) …......................................................32

In re Groupon, Inc. Marketing and Sales Practice Litigation, No. 11-md-2238-DMS, 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28, 2012)..............................................................................24

In re Ins. Brokerage Antitrust Litig., No. 04-5184 (CCC), 2012 U.S. Dist. LEXIS 46496 (D.N.J. Mar. 30, 2012)............................................................................................................ 28, 31, 33

In re Insurance Brokerage Antitrust Litig., 579 F.3d 241 (3d Cir. 2009) ....................................... 19, 30

In re Linerboard Antitrust Litig., 2004 WL 1221350 (E.D. PA. June 2, 2004) ......................................29

In re LG/Zenith Rear Projection TV Class Action Litig., No. 06-5609 (JLL), 2009 U.S. Dist. LEXIS 13568 (D.N.J. Feb. 18, 2009) ...........................................................................................3

In re Merck & Co. Vytorin ERISA Litig., No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) ...........................................................................................................17

In re Rite Aid Corp. Sec. Litig., 396 F.3d 294 (3d Cir. 2005) ............................................... 14, 15, 19, 27

In re Safety Components Sec. Litig., 166 F. Supp. 2d 72 (D.N.J. 2001)........................................... 26, 31

In re Schering-Plough Corp., No. 08-1432 (DMC)(JAD), 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012)....................................................................................................................3

J/H Real Estate, 951 F. Supp. 63 (E.D. Pa. 1997)....................................................................32

Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283 (3d Cir. 1998) ................................................................................... 15, 30

Larson v. Sprint Nextel Corp., No. No. 07-5325, No. 07-5325, 2010 U.S. Dist. LEXIS 3270 (D.N.J. Jan. 15, 2010) ..............................................................................................................30

McCoy v. Health Net, Inc., 569 F. Supp. 2d 448 (D.N.J. 2008)................................................... 26, 27, 31

McGee v. Cont'l Tire N. Am., Inc., No. 06-6234 (GEB), No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009)..............................................................................................17

Mehling v. New York Life Ins. Co., 248 F.R.D. 455 (E.D. Pa. 2008) ...................................................26

Milliron v. T-Mobile United States, 423 Fed. Appx. 131 (3d Cir. 2011)........................................... 14, 30

O'Keefe v. Mercedes-Benz United States, LLC, 214 F.R.D. 266 (E.D. Pa. 2003) .................... 27, 28, 29

Philips/Magnavox TV Litig., No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012)..................................................................................................... 12, 15, 17

Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253 (3d Cir. 2002) ............................................................................................16

Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179 (3d Cir.  1985) .........................16

Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.), 327 F. Supp. 2d 426 (D.N.J. 2004).................................................................................................................25

Schering-Plough/Merck Merger Litig., No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010)..................................................................................... 15, 16, 17, 32

Stalcup v. Schlage Lock Co., 505 F. Supp. 2d 704 (D. Colo.  2007) ......................................................27

Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207 (D.N.J. 2005) ...................................................23

Weber v. Gov't Emples. Ins. Co., 262 F.R.D. 431 (D.N.J. 2009) ..........................................................25

Statutes

28 U.S.C. § 1715..................................................................................................................10

Rules Federal Rule of Civil Procedure 23 ......................................................................................5, 12

Other Authorities

Herbert Newberg & Alba Conte, Newberg on Class Actions, Section 14.03 at 14- 5 (3d ed. 1992)..................................................................................................................30

# I. INTRODUCTION

Preparation and research began on this case in or around August of 2012 when Plaintiff Yvonne Robinson, a disabled United States Army veteran, came into my office and told me while driving down the road, she nearly got into a serious accident when  her 2003 Kia Sorento suddenly lost power steering and all the hazard lights flashed on her dashboard indicating serious engine failure.  She told me about many many others and introduced me to Rose Ciros, another owner of a Kia Sorento.  After additional substantial research, I decided to accept and pursue this case on a wholly contingency fee basis.

Kia fought long and hard and I survived to motions to dismiss.  However, after tracking other class actions and considering the limited life of a Kia Sorento and wanting to obtain real money for my Plaintiffs I was able to negotiate a settlement that creates substantial benefits for a class of thousands of consumers.

Plaintiffs seek an Order that provides for Defendant Kia Motors of America, Inc., ("Defendant" or "Kia Motors") to pay (a) $275,000 to Plaintiffs' Counsel for the payment of their attorneys' fees and reimbursement of expenses, pursuant to section VII, Paragraph 50, that Kia Motors agrees to pay (and shall pay, if approved by the Court),incentive awards to named plaintiffs ($2,500.00 each to Yvonne Robinson, Rose Ciros, Robert McConnell, Jesse Howell & Cheryl Moxey; $1,500.00 each to Phillip Doran and Irene Goodwin, who had both had their claims dismissed or a total amount of $15,500.00 incentive total).

 The parties negotiated at arms' length and reached agreement regarding these provisions only after they had agreed upon all other material terms of the SA. Significantly, these payments – if approved – will not reduce or impact the settlement consideration made available to the Class pursuant to the SA. Consistent with the terms of the SA, Kia Motors does not oppose these requests by Plaintiffs, and agrees to pay them if approved by the Court.

The SA was submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, and is set forth at Docket Entry No. 71. The capitalized terms used in this Memorandum are defined in Section II of the SA.  In addition, Class Members were told that Plaintiffs would request these amounts in the Notice that was provided to Class Members pursuant to the Notice Program, and is posted on the Settlement Website.  As discussed below, given the amount of work performed by Class Counsel, the outstanding results achieved and other applicable factors, the fee and expense requests are reasonable and should be approved. The incentive awards requested by Plaintiffs are also within the range of those awards approved by this Court, and are warranted here to recognize the time and effort Plaintiffs committed to this case, which was indispensable to its successful resolution. Plaintiffs respectfully request that the Court enter the proposed Order submitted herewith granting each of these requests.

II. FACTUAL BACKGROUND

A. Plaintiffs' Complaint Allegations and Pre-Litigation Investigation.

This class action lawsuit was commenced on January 1, 2013.  It was filed after an extensive pre-suit investigation by Plaintiffs' counsel that began in August of 2012.  This investigation included, inter alia, speaking with class members, reviewing their documents, and reviewing Kia Motors engine, designs in conjunction with automotive experts.

The initial complaint was filed by Plaintiffs Ciros, Robinson, and Howell against Hyundai Motor Company, Kia Motors America, Inc., and other entities as defendants.  It alleged numerous claims sounding in breach of express and implied warranties and consumer fraud.  Kia moved to dismiss the complaint in its entirety for failure to state claims upon which relief could be granted.  (Dkt. No. 10.)  In addition to opposing Kia's motion, plaintiffs cross-moved to amend their complaint, to add new parties—Plaintiffs Moxey, McConnell, Goodwin, and Doran—and new claims.  (Dkt. No. 15.) Kia opposed that cross-motion.  (Dkt. No. 17.)

The Court held oral argument on the pending motions on June 20, 2014 (*see* Dkt. No. 31), and issued an opinion and order granting in part and denying in part Plaintiffs' motion for leave to amend

(Dkt. Nos. 32, 33.)  That order denied the proposed amendments as to Plaintiffs Goodwin and Doran; striking their proposed new claims for breach of the South Carolina Consumer Protection Code and the Washington Consumer Protection Act, respectively, but permitted the addition of Plaintiffs Moxey and McConnell along with their new claims.  *Id*.  The Court's order also denied Kia's pending motion to dismiss without prejudice to Kia's right to renew that motion as to the Amended Complaint.

B.  The Amended Complaint

On October 27, 2014, Plaintiffs filed the Amended Complaint permitted by the Court's order. (Dkt. No. 35.)  In that pleading, Plaintiffs described in detail an alleged design defect regarding the crankshaft pulley bolt and balancer in certain Kia Sorento vehicles equipped with a 3.5-liter 24-valve DOHC V6 engine.  Plaintiffs also alleged that the defect could cause the pulley to break, leading to engine failure and the loss of functioning of various accessory components associated with the rotation of the crankshaft.  Plaintiffs further alleged that Kia knew of the defect and failed to disclose it to consumers.  Plaintiffs finally alleged that Kia refused to honor the powertrain warranty for these vehicles and thus declined to reimburse dealers for repairs needed by customers for such vehicles although covered by such warranty.  Based on these allegations, Plaintiffs alleged various claims, including breach of express warranty, breach of implied warranty, and common law and statutory fraud based on alleged misrepresentations and omissions (*see* Am. Compl. at Counts I-XI).

The Amended Complaint included named Plaintiffs from New Jersey, Ohio, Florida, and Pennsylvania.  (*Id.* at ¶¶ 16-20.)  Between 2004 and 2011, these Plaintiffs purchased used or new Settlement Class Vehicles.  (*Id.* at ¶¶ 64, 71, 79, 88, 98.)  As described in the Amended Complaint, each Plaintiff experienced technical difficulties that required repairs relating to the crankshaft pulley bolt. (*See id.* at ¶¶ 67, 74, 82, 93, 100.)  The Amended Complaint sought class certification for a nationwide class, as well as sub-classes for residents of Florida, New Jersey, Pennsylvania, and Ohio (*see id.* ¶ 1). Kia renewed its motion to dismiss for failure to state a claim upon which relief could be granted.  (Dkt. No. 44.)  Following full briefing on that motion, the Court issued an opinion and order on September

11, 2015. (Dkt. No. 47.) The Court granted Kia's motion in part, and dismissed with prejudice Count II (Ohio Consumer Sales Practices Act), Count III (Florida Deceptive and Unfair Trade Practices Act), Count V (breach of express warranty),[1] Count IX (negligence) and Count X (breach of contract). (*Id.*) The Court also dismissed with prejudice Count VI (breach of implied warranty of merchantability) and Count VII (Magnuson-Moss Warranty Act) as to Plaintiffs Robinson, Howell, and Moxey. (*Id.*) The surviving claims included statutory and common law fraud; the Magnuson-Moss Warranty Act and implied warranty of merchantability claims of Plaintiffs Ciros and McConnell; and Plaintiffs' request for declaratory and/or injunctive relief. (*Id.*)

C.   Mediation and Confirmatory Discovery

At the Court's suggestion, the parties thereafter agreed to participate in mediation. Also at the Court's suggestion, the parties retained former United States District Judge Dennis Cavanaugh to serve as the mediator. During the course of several months in early 2016, Judge Cavanaugh and the parties held mediation sessions on three separate occasions, and further engaged in numerous additional joint and *ex parte* teleconferences. Each of the three mediation sessions lasted nearly an entire business day. Ultimately, with the assistance of Judge Cavanaugh—and subject to confirmatory discovery regarding Kia's representations during settlement negotiations—the parties agreed on the material terms of a class-wide settlement. All of the terms of the proposed settlement are the result of extensive, adversarial, and arm's-length negotiations between knowledgeable counsel, as facilitated by Judge Cavanaugh as mediator.

The parties thereafter engaged in extensive confirmatory discovery. In response to Plaintiff's requests, Kia produced approximately 10,000 pages of documents, including: design drawing and specifications; vehicle service and warranty history for each of the named Plaintiffs; Technical Service Bulletins and service campaign documents specifically dealing with the Crankshaft Pulley Bolt;

_____

[1]

owners' manuals and warranty manuals for each of the Settlement Class Vehicles; warranty claims data for the Settlement Class Vehicles; and documents identifying Defendants' internal analysis of the issue and the development of product improvements directed toward the crankshaft pulley bolt, and especially the manner and effectiveness of how it was torqued in the engine.  Counsel for both sides thereafter met and conferred regarding these documents.

Plaintiffs' counsel also conducted the deposition of Robert Kuhn, Managing Engineer in JP Research's Detroit area office.  An automotive systems engineer with more than 32 years of experience, Mr. Kuhn specializes in analysis of engineering design issues, engine testing, analysis of warranty data, and investigation and analysis of repair and damage events for a variety of vehicle types including passenger cars.  Mr. Kuhn reviewed Kia documents concerning the two countermeasures implemented in 2003, and a third countermeasure implemented in 2005, directed to ensuring that the crankshaft pulley bolt in class vehicles was properly torqued.  Mr. Kuhn also reviewed Kia warranty data and service campaign documents.  Mr. Kuhn testified that Kia reasonably identified issues related to the torqueing of the crankshaft pulley bolt and, based upon the timing of each countermeasure and its correlation to the warranty data, each countermeasure resulted in a reduction in warranty claims relating to the crankshaft pulley bolt, with the final countermeasure reducing the warranty claims rate to a low, background-level claims rate.

As noted above, and separate from this confirmatory discovery process, Plaintiffs' counsel also interviewed multiple non-party witnesses and responded to inquiries from putative class members; dozens of putative class members have directly contacted Plaintiffs' counsel as of the date of this filing.

III.  The Settlement Agreement:

If approved, the settlement will provide substantial benefits to the following Class:  all persons in the United States, who currently own or lease, or who previously owned or leased, a Class Vehicle (as identified in detail in the Settlement Agreement itself).  Excluded from the Settlement Class are officers and directors of Kia (as defined in the Settlement Agreement).

The benefits made available pursuant to the Settlement Agreement reasonably address the issues occurring in the field with customer vehicles.  Most notably, with the focus on providing a benefit to Kia's customers, the settlement provides coverage for crankshaft pulley bolt issues and resulting engine damage under Kia's express warranties, despite that the Court had previously dismissed those claims. The settlement in fact goes beyond the terms of Kia's warranties and provides repair and reimbursement benefits without regard to the ten-year time limitation, based only on vehicle use/mileage.  The specific benefits include the following:

A. Original Purchasers

Original purchasers who incurred out-of-pocket repair expenses for parts, labor and/or towing, caused by a crankshaft pulley bolt problems occurring before 100,000 miles, are eligible for reimbursement up to $4,900 for repairs resulting from a crankshaft pulley bolt issues and towing expenses, if any. Additionally, if an original purchaser had a Class Vehicle repaired due to a crankshaft pulley bolt issue before 100,000 miles, and the bolt issue appeared again and caused engine damage within the earlier of 12 months or 12,000 miles of that repair, they are eligible for reimbursement of up to $4,900 on the same basis   under the Replacement Parts and Accessories Limited Warranty.

Finally, if an original purchaser experiences a future crankshaft pulley bolt issue before 100,000 miles, Kia will provide a free repair at an authorized Kia dealership.[2]  The genuine Kia replacement parts used in that repair also are covered by the Replacement Parts and Accessories Limited Warranty.

B. Used Purchasers

Class members who purchased used Class Vehicles and who incurred out-of-pocket repair expenses for parts, labor and/or towing caused by a crankshaft pulley bolt issues during the 5-year/60,0000 New Vehicle Limited Warranty, are eligible for reimbursement of those repair and towing expenses up to a maximum of $4,900.00.

Further, used vehicle purchasers who incurred such expenses after the expiration of their 5-year/60,000

2

New Vehicle Limited Warranty, but prior to 100,000 miles, are eligible to receive $175.00 toward those expenses.   As will be detailed in a forthcoming report from Kia Motors, notification to Settlement Class Members commenced soon after the Court provided preliminary approval of the proposed settlement on November 3, 2016.   Kia Motors will provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.    To date, there has been no substantive comment or response received from any of the attorneys general or other notified officials. The Settlement Agreement clearly delineates the process and procedure in the event that Kia Motors rejects a claim for full reimbursement of out-of-pocket expenses. Kia Motors will provide notice of its decision to the claimants and provide them with 30 days to cure any defect. Should Kia Motors again reject the claim, Kia Motors will advise the claimants of the right to a Second Review. The claimants may then accept Kia Motors's decision, or request the Second Review by sending the requisite form within thirty (30) days of receipt of this notice of right to Second Review. If that does not resolve the dispute, claimants may submit their claims to the Better Business Bureau, whose findings will be final and binding on both parties. The Settlement Agreement also accounts for any Settlement Class Members who wish to object or exclude themselves from the settlement. Any such request must be postmarked by June 13, 2016, for those who wish to opt-out of the settlement and June 19, 2017, for those who wish to object to the settlement. Those Class Members who do not opt-out have an additional 60 days after the date of the final approval hearing to submit a Claim Form.  The Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who actually has standing as a Settlement Class Member.   If the final approval hearing occurs as scheduled on June 19, 2017, Settlement Class Members will have until October 1, 2016, to submit claims. 5 If one thousand (1,000) Class Members opt out of the Settlement, the parties have the right – but not the obligation – to terminate the settlement. Within seven (7) days prior to the final approval hearing, Kia Motors is to provide the Court and Class Counsel with a complete exclusion list.

<u>The Preliminary Approval Order and Response by Settlement Class Members.</u>

   As mentioned above, on November 3, 2016, the Court issued an order that granted preliminary approval to the parties' settlement, authorized the proposed notification to the class, and set the final approval hearing for Tuesday, June 19, 2017 at 10:00 a.m. (See ECF No. 72.) The deadline for objections and optouts has not yet passed.

<u>IV. ARGUMENT</u>

   Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). "The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous." In re Philips/Magnavox TV Litig., No. 09-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *42 (D.N.J. May 14, 2012) (citing In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001)). In the class action settlement context, the Court is "required to clearly articulate the reasons that support its fee determination." Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *40-41 (D.N.J. Mar. 22, 2013) (citations omitted).

   Pursuant to that rule and the SA, Plaintiffs now apply for a total fee and expense award of $275,000.00, which accounts for both the attorneys' fees representing Plaintiffs and  litigation expenses. Kia has agreed not to oppose Class Counsel's attorneys' fees and costs request in the aggregate amount of up to $275,000.00.  Kia also has agreed not to oppose a cumulative total of $15,500.00 in incentive awards for the named plaintiffs ($2,500.00 each to Yvonne Robinson, Rose Ciros, Robert McConnell, Jesse Howell & Cheryl Moxey; $1,500.00 each to Phillip Doran and Irene Goodwin, who had both had their claims dismissed).   These requests are reasonable considering the work performed and the results achieved, and are far below similar awards recently approved by this

Court. The SA is the product of strenuous and efficient efforts by Plaintiffs' Counsel through difficult phases of investigation, discovery, and adversarial litigation, in a case involving complex issues of fact and law. In addition, these fees, costs, and incentive awards will be paid separately from – and in addition to – the benefits made available to the Settlement Class. For the reasons that follow, these requests should be approved.

A.  The Fee Request Should be Evaluated Under the Lodestar Method.

In class action settlements, "[a]ttorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method." In re AT&T Corp. Secs. Litig., 455 F.3d 160, 164 (3d Cir. 2006) (citing In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005)). Under the lodestar method, the district court "determines an attorney's lodestar by multiplying the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

   In undertaking this approach, the Court is "is not required to engage in this analysis with mathematical precision or 'beancounting'" and "may rely on summaries submitted by the attorneys" without "scrutinize[ing]every billing record." Henderson, 2013 U.S. Dist. LEXIS 46291, at *43-44 (quoting (In re Rite Aid Corp. Sec. Litig., 396 F.3d at 306-07)). The lodestar method "has appeal where . . . the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 590 (D.N.J. 2010) (citations omitted), rev'd on other grounds, Dewey v. Volkswagen Aktiengesellscahft, 681 6 The percentage-of-recovery methodology, on the other hand, "is favored in common fund cases," and is calculated by applying "a certain percentage to the settlement fund." Milliron v. T-Mobile United States, 423 Fed. Appx. 131, 135 (3d Cir. 2011).  It is "designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp.

Prides Litig.), 243 F.3d 722, 732 (3d Cir. 2001) (quoting Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 333 (3d Cir. 1998)). Which one of these two methodologies to use "will rest within the district court's sound discretion." Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997). While either methodology will confirm the reasonableness of the fee requested here, Plaintiffs respectfully submit that the Court should use the lodestar method in this case. See In re Philips/Magnavox TV Litig., 2012 U.S. Dist. LEXIS 67287, at *44 (determining fees based on the lodestar method); Dewey,728 F. Supp. 2d at 593 ("[I]f the settlement's value is certain, the Court can use the percentage-of-recovery method to calculate attorneys' fees, but if the value is too uncertain, then the Court must use the lodestar method."). See also In re ScheringPlough/Merck Merger Litig., No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *47, *52-54 (D.N.J. Mar. 25, 2010) (noting that the existence of complexities in valuing a settlement supports use of the lodestar method).

B. Class Counsel's Lodestar Figure is Reasonable.

The lodestar method involves two initial steps. The first step is to determine the appropriate hourly rate, based on the attorneys' usual billing rate and the "prevailing market rates" in the relevant community. See In re ScheringPlough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *54 (citations omitted). The second step is to assess whether the billable time was reasonably expended. Id. "Time expended is considered 'reasonable' if the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" Id. at *54-55 (quoting Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1985)). The lodestar figure is "presumptively reasonable" where it arises from a reasonable hourly rate and a reasonable number of hours. Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey, 297 F.3d 253, 265 n.5 (3d Cir. 2002) (citations omitted.

   Here, fact that the fees were negotiated between the parties also supports approval of Plaintiffs' request. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("Ideally, of course, [class] litigants will

settle the amount of a fee.").  The final step in the lodestar analysis, discussed infra, is to determine

whether to increase or decrease the lodestar amount by applying a lodestar multiple. In re Schering-

Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *55.  Plaintiffs' Counsel billed his time

at their current billing rates charged to his clients, and all of the billable time was necessary to secure

the results obtained.

   The hourly billable rates of Plaintiffs' Counsel used to calculate these lodestar values are entirely

consistent with hourly rates routinely approved by this Court in complex class action litigation. Indeed,

the Court's final approval and fee approval petition in Henderson found that Chimicles & Tikellis' (and

its co-counsel's) "billing rates to be appropriate and the billable time to have been reasonably

expended." 2013 U.S. Dist. LEXIS 46291, at *45. See also, In re Merck & Co. Vytorin ERISA Litig.,

No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344, at *45 (D.N.J. Feb. 9, 2010) (approving rates

between $250 and $835 per hour); McGee v. Cont'l Tire N. Am., Inc., No. 06-6234 (GEB), 2009 U.S.

Dist. LEXIS 17199, at *50 (D.N.J. Mar. 4, 2009) (approving hourly rates of $ 495 and $ 600); In re

Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *57 ("…an overall hourly

lodestar non-weighted average ranging from $ 465.68 to $ 681.15 is not unreasonable in light of similar

rates charged in the market and in light of the usual billing rates documented in counsel's declarations

to the Court.").  This reported time does not include any of the billable time for the work that will be

performed by Plaintiffs' counsel going forward, including the future work that will be associated with

claims and settlement administration. See In re Philips/Magnavox TV Litig., 2012 U.S. Dist. LEXIS

67287, at *47 (observing, in analyzing a fee request, that the submitted figures did not include time and

expenses incurred by counsel subsequent to the submission of that motion); Henderson, 2013 U.S. Dist.

LEXIS 46291, at *44, n.11 (same).

C. The Gunter Factors Confirm the Reasonableness of the Fee Request.

In addition to determining the method of calculating the fee award, the court is obliged to ensure that

the fee awarded is reasonable. In re Cendant Corp. Litig., 264 F.3d 201, 283 (3d Cir. 2001). In Gunter

v. Ridgewood Energy Corp., the Third Circuit provided a series of non-exhaustive factors for district courts to consider in this regard: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. Gunter, 223 F.3d 190, 195 n.1.10 In addition to these factors, the Third Circuit has listed three other factors that may be relevant: "(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement." In re AT&T Corp. Secs. Litig., 455 F.3d 160, 165 (3d Cir. 2006) (internal citations omitted). These factors "need not be applied in a formulaic way...and in certain cases, one factor may outweigh the rest." In re Insurance Brokerage Antitrust Litig., 579

These Gunter factors were cited and applied by the Third Circuit in reviewing whether a percentage of the total recovery fee was reasonable. See In re Insurance Brokerage Antitrust Litig., 579 F.3d 241, 279-80 (3d Cir. 2009). District courts are to engage in "robust assessments of the fee award reasonableness factors when evaluating a fee request." Id. (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 302 (3d Cir. 2005)). Each of the Gunter factors support the fee request here.

1.      The Size of the Fund Created and the Number of Persons Benefitted. The SA in this case makes available substantial relief. There are approximately 203,000 Class Vehicles that were sold and leased throughout the United States. All of these Settlement Class Members will be entitled to the relief described above, and can be assured of immediate and certain compensation under the terms of the SA.

2.      The Presence or Absence of Substantial Objections by Members of the Class. As discussed above, the deadline by which class members may object to the SA – including Plaintiffs' request for

attorneys' fees – is June 19, 2017. While this fee petition is being filed before the expiration of the objection period, because the fee amount is small in relationship to the outcome, it is not anticipated there would be any objections.

3.       The Skill and Efficiency of the Attorneys Involved. The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." In re Safety Components Sec. Litig., 166 F. Supp. 2d 72, 96 (D.N.J. 2001). Related factors include "'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 476 (D.N.J. 2008) (quoting Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 465 (E.D. Pa. 2008)). The goal of this Gunter factor is to ensure "that competent counsel continue to undertake risky, complex and novel litigation" for the benefit of large numbers of class members who might otherwise lack reasonable access to justice. Gunter, 223 F.3d at 198. The result obtained in this case is in large measure a reflection of the tenacity with which Plaintiffs' Counsel attended to this litigation. Plaintiffs' Counsel has achieved enormous benefits for Settlement Class Members, which speaks volumes for Plaintiffs' Counsel's abilities. And Plaintiffs' Counsel respectfully submits that their submissions to the Court in this case were of high quality. As such, this factor supports the fee request.

4.       The Complexity and Duration of the Litigation.

This complex class action litigation lasted nearly FOUR years, and required extensive work by Plaintiffs' Counsel (including motion practice, discovery, a 30(b)(6) deposition, and an in-person settlement conferences) to result in a successful conclusion. Several courts have recognized that "any class action presents complex and difficult legal and logistical issues which require substantial expertise and resources." Stalcup v. Schlage Lock Co., 505 F. Supp. 2d 704, 707 (D. Colo. 2007). See also, McCoy, 569 F. Supp. 2d at 477. The amount of compensation sought by the Class Counsel is reasonable when assessed in light of these factors. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294,

305 (3d Cir. 2005) (district court did not abuse its discretion in concluding that – in light of legal issues, duration of the case, discovery, and the necessity of resorting to mediation to reach a final settlement – the matter was complex).

5. The Risk of Nonpayment.

Class Counsel brought this litigation on a purely contingency fee basis and the risk of non-recovery was sufficiently substantial to justify the instant fee request. See O'Keefe v. Mercedes-Benz United States, LLC, 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("Any contingency fee includes a risk of non-payment. That is why class counsel will be paid a percentage that is several times greater than an hourly fee in this case."). Indeed, in In re Ins. Brokerage Antitrust Litig., this Court observed that "Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." No. 04-5184 (CCC), 2012 U.S. Dist. LEXIS 46496, at *135 (D.N.J. Mar. 30, 2012) (citations omitted). In addition, there is no question that Kia Motors is financially stable and able to pay claims made under the settlement. See O'Keefe, 214 F.R.D. at 309 (observing that "[t]his factor more properly addresses the concern that class counsel risks non-payment after securing class recovery because of the precarious financial position of the defendant" and stating "[Mercedes] is financially stable and no one has questioned its ability to pay. This factor is not relevant in this case.").

6. The Amount of Time Devoted to the Case by Class Counsel.

In terms of the sheer amount of genuine labor involved on the part of the Plaintiffs, there were over 335 hours of contingent work performed by Class Counsel in litigating this matter. In addition to the motion practice in this case, Plaintiffs received (and reviewed) discovery from Kia Motors related to the settlement and took the 30(b)(6) deposition of a Kia Motors expert. This commitment of time and effort clearly supports Class Counsel's fee request.

7. The Awards in Similar Cases.

A review of similar cases demonstrates that the fee request here is reasonable and appropriate. See, e.g., Davitt v. Honda N. Am., No. 2:13-cv-00381- MCA-JBC, ECF No. 71 (D.N.J. May 8, 2015) (approving

a requested $1.4 million fee and expense award); Henderson, 2013 U.S. Dist. LEXIS 46291, at *55 (approving a requested $3 million fee and expense award); McGee, supra ($2,274,983.70 in fees and expenses, representing a multiplier, justified in a consumer class action); O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 304 (E.D. Pa. 2003) ($4,896,783.00 in fees justified in class action involving allegedly defectively design rear lift-gate latch). Accordingly, this and the other Gunter factors strongly support granting the requested fee.

D. The Requested Fees Are Reasonable Under a Cross-Check.

The Third Circuit has recommended that district courts perform a "crosscheck" of a fee award. Briggs v. Hartford Fin. Servs. Group, Inc., No. 07-CV- 5190, 2009 U.S. Dist. LEXIS 66777, at *55, n.98 (E.D. Pa. July 31, 2009). See also, In re Linerboard Antitrust Litig., 2004 WL 1221350 at *48 (E.D. PA. June 2, 2004) ("While the Court adopts the percentage of recovery method, the Court will also subject petitioners' proposed fee to a cross-check using the lodestar method"). The purpose of doing a lodestar cross-check is "to insure that plaintiffs' lawyers are not receiving an excessive fee at their clients' expense." Gunter, 223 F.3d at 199. Under the "cross-check" method, the Court multiplies the hourly rates by the applicable hours to get a lodestar amount. The lodestar multiplier is then obtained by dividing the proposed fee award by the lodestar amount. In re Insurance Brokerage Antitrust Litig., 579 F.3d at 280. See also, Larson v. Sprint Nextel Corp., No. 07-5325, 2010 U.S. Dist. LEXIS 3270, at *89-90 (D.N.J. Jan. 15, 2010) ("The lodestar multiplier is calculated by dividing the attorneys' fees that Class Counsel seeks by Class Counsel's associated lodestar."). In this case, the lodestar "cross-check" confirms the propriety of the fee sought. Class Counsel are reporting their lodestar using a method by which hours expended by each attorney are multiplied by the attorney's hourly rate. Based on these figures, the requested fee amount ($275,000) is 100% of Plaintiffs' counsel's actual lodestar ($275,000).  Courts routinely find in complex class action cases that a multiplier of one to four of counsel's lodestar is fair and reasonable. See Boone v. City of Phila., 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009).

E. Plaintiffs' Counsel's Expenses Should be Approved.

There is little question that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." Careccio v. BMW of N. Am. LLC, Case No. 08-2619, 2010 U.S. Dist. LEXIS 42063, at *22 (D.N.J. Apr. 29, 2010) (quoting In re Safety Components Int'l Sec. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001)); accord In re Ins. Brokerage Antitrust Litig., 2012 U.S. Dist. LEXIS 46496, at *144-45 (recognizing the same principle, and approving an expense request of $394,192.76). In this case, Plaintiffs' Counsel have incurred $5833.00 in properly documented expenses for the common benefit of Class Members. The requested expenses will be paid from the total $275,000 fee and expense request. Plaintiffs' counsel put forward these necessary out-of-pocket costs without assurance that they would ever be repaid. The requested amount is therefore reasonable and should be approved. See, e.g., In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *58 (approving expenses that were "adequately documented and reasonably and appropriately incurred in the prosecution of the case."); In re Datatec Sys. Sec. Litig., No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007) (approving "costs associated with experts, consultants, investigators, legal research, mediation,  meals, hotels, transportation, word processing, court fees, mailing, postage, telephone, telephone, and the costs of giving notice.").

F. The Requested Incentive Awards Should be Approved.

The service provided by the Class Representatives in this action should not go without financial recognition. While service as a representative plaintiff is not a profit-making position, the law recognizes that it is appropriate to make modest payment in recognition of the services that such plaintiffs perform in successful class litigation. See, e.g., J/H Real Estate, 951 F. Supp. 63, 66 (E.D. Pa. 1997); In re GNC Shareholder Litig., 668 F. Supp. 450, 451 (W.D. Pa. 1987). The SA here recognizes this principle by providing incentive award payments and Kia has agreed not to oppose a cumulative

total of $15,500.00 in incentive awards for the named plaintiffs ($2,500.00 each to Yvonne Robinson,

Rose Ciros, Robert McConnell, Jesse Howell & Cheryl Moxey; $1,500.00 each to Phillip Doran and

Irene Goodwin, who had both had their claims dismissed).   These Class Representatives were a key

catalyst to achieving this result for the Class. They participated in conferences and meetings with their

attorneys, searched for and produced documents relevant to their claims in the litigation, and stayed

abreast of significant developments in the case.   These incentive awards will be paid separate from the

consideration in the SA, and will not reduce the recovery to any Settlement Class Member. See In re

LG/Zenith Rear Projection TV Class Action Litig., No. 06-5609 (JLL), 2009 U.S. Dist. LEXIS 13568,

at *25 (D.N.J. Feb. 18, 2009) (approving incentive award that "will not decrease the recovery of other

class members.").

WHEREFORE it is respectfully requested the attorney's fees, expenses and incentive awards be

granted.

Dated: November 14, 2016                    /s/ Shmuel Klein